**STATE OF HAWAII**, Plaintiff–Appellee, v. **MANUEL LIRA**, aka Manny, Defendant–Appellant

NO. 12265

(CR. NO. 86–1236)

JULY 14, 1988

LUM, C.J., NAKAMURA, PADGETT,
HAYASHI, AND WAKATSUKI, JJ.

OPINION OF THE COURT BY NAKAMURA, J.

Manuel Lira, appealing from a judgment of conviction of two counts of Rape in the First Degree, asserts the Circuit Court of the First Circuit erred in refusing to instruct the jury on the effect of the complaining witness' consent to the conduct alleged and in denying the motion to dismiss the prosecution on the ground that his right under the state and federal constitutions to a speedy trial was violated. Having reviewed the record of proceedings in the circuit court, we conclude the jury should have been instructed as requested by the defendant.[1] Thus, we vacate the judgment of conviction and remand the case for a new trial.

## I.

### A.

The indictment brought by the Grand Jury of the First Circuit charged Manuel Lira with two counts of Rape in the First Degree and one count of Kidnapping.[2] The evidence adduced by the prosecution to support the charges indicated that shortly after noon on October 8, 1985, Camille Springer and Victor Malgarejo went to Queen's Beach at Wai-

---

[1] We find no merit in the defendant's claim that his right to a speedy trial was violated.

[2] In 1985, when Manuel Lira allegedly raped Camille Springer, Hawaii Revised Statutes (HRS) § 707–730(1)(a)(i) read:

> **Rape in the first degree.** (1) A person commits the offense of rape in the first degree if:

kiki, intending to spend the afternoon swimming and sunbathing. Miss Springer saw the defendant, whom she had known for several months, upon arriving at the beach. When her companion left at about 2:00 p.m., the defendant and his friend, Ed Calderon, joined her. And the three of them whiled away several hours drinking tequila and orange juice.

At about 6:00 p.m., Miss Springer remembered she had to call a prospective employer, and the three left the beach and walked toward Kapiolani Park in search of a telephone. After she completed the call, they sat in the park and drank some wine. Miss Springer then decided to look for Victor Malgarejo. The two males said they would accompany her, and the defendant suggested a "back route" out of the park, leading the group toward the North end of the park. When they reached a secluded area near the Honolulu Zoo, the defendant urged Miss Springer to take a path he said was a "short cut" to Kalakaua Avenue. She did as he directed, but Calderon apparently did not. When she reached the end of the pathway, the defendant was waiting for her.

Miss Springer told the jury the defendant then "grabbed [her] by [the] shoulders and threw [her] to the ground." She said she wanted to scream but the defendant prevented her from doing so by putting his hand in her mouth, pushing her face to the ground, and threatening her with harm if she did. And she said the defendant then pulled off the towel she had around her waist and tore away the bottom of her two–piece bathing suit. The complaining witness testified the defendant subsequently "inserted his finger inside [her] vagina[] [a]nd then he inserted his penis inside [her]." She managed to free herself thereafter and sought help.

B.

Miss Springer's account of what happened on October 8, 1985 differed in significant respects from what was recounted for the jury by the defendant and Calderon. In the defendant's account, the crucial encounter

---

(a) The person intentionally engages in sexual intercourse, by forcible compulsion, with another person and:

    (i) The other person is not, upon the occasion, his voluntary social companion who had within the previous thirty days permitted him sexual intercourse of the kind involved[.]

took place at the North end of Kapiolani Park, where he, Calderon, and Miss Springer had gone to finish the wine; it occurred after Calderon left them to go to a restroom. The complaining witness, the defendant said, "put her hand on [him] and [they] started making out[.]" She then suggested they "get down." This invitation to engage in intercourse, he claimed, was rejected because the pain he was experiencing from a broken jaw sustained the night before rendered it impossible for him to have an erection. She nevertheless persisted in her efforts to arouse him but failed. When he suggested that she might turn to Calderon, she reacted by calling him vile names. Lira admitted slapping Miss Springer when this occurred, but he denied inserting his penis in her vagina at any time and said he did not believe he put a finger in her vagina.

Calderon's testimony generally supported Lira's; he said he "snuck up" on Miss Springer and Lira upon returning from the restroom, hid behind a bush, and listened to their conversation. He too said Miss Springer was enraged by the defendant's suggestion that she might do better with someone else. And Calderon testified that he emerged from his hiding place in time to see Miss Springer move hostilely toward Lira and Lira grab and push her.

## C.

At the close of evidence, the defendant moved for a judgment of acquittal on all counts. The circuit court acquitted him of Kidnapping but submitted the offenses of Rape in the First Degree to the jury for determination. The jury instructions sought by the defendant included two dealing with "consent,"[3] but neither was given. The jury found the defendant guilty of the two offenses, and he perfected a timely appeal to this court from the judgment of conviction entered by the circuit court.

---

[3] The Defendant's Instruction No. 4 read:
   Consent is a complete defense to all of the charges against MANUEL LIRA.
   The Defendant's Instruction No. 5 read:
   In any prosecution, the victim's consent to the conduct alleged, or to the result thereof, is a defense if the consent negatives an element of the offense or precludes the infliction of the harm or evil sought to be prevented by the law defining the offense.

## II.

Where, as in this appeal, the defendant in a criminal case avers an instruction covering a defense he raised at trial was refused in error, the claim must be considered in the light of a rule that he "is entitled to an instruction on every defense or theory of defense having *any* support in the evidence, provided such evidence would support the consideration of that issue by the jury, no matter how weak, inconclusive or unsatisfactory the evidence may be." *State v. O'Daniel*, 62 Haw. 518, 527–28, 616 P.2d 1383, 1390 (1980) (citations omitted) (original emphasis). And the initial inquiry is whether the defense purportedly supported by the evidence is recognized as a defense under the law.

### A.

The appellant urges the evidence presented to the jury entitled him to an instruction on consent. "Generally, it may be said that consent by the victim is not a defense in a criminal prosecution." LaFave & Scott, *Handbook on Criminal Law* § 57, at 408 (1972). The Penal Code, however, provides that "[i]n any prosecution, the victim's consent to the conduct alleged, or to the result thereof, is a defense if the consent negatives an element of the offense or precludes the infliction of the harm or evil sought to be prevented by the law defining the offense." HRS § 702–233 (1985). Thus, we turn to the offense and unlawful conduct alleged in the indictment to see if consent might have negatived an element of Rape in the First Degree.

Rape at common law was "the act of a man having unlawful carnal knowledge of a female over the age of ten years by force without the consent and against the will of the victim." *Hazel v. State*, 221 Md. 464, 468–69, 157 A.2d 922, 924 (1960) (citation omitted); *see also State v. Cutrer*, 140 La. 34, 35, 72 So. 800, 800 (1916) (quoting 33 Cyc. pp. 1415, 1416). Prior to the adoption of the Penal Code, the crime was defined in the Hawaii Revised Statutes as encompassing "carnal intercourse with any female, by force and against her will[.]" HRS § 768–61

(1968).[4] When Manuel Lira allegedly raped Camille Springer the applicable code provision, HRS § 707–730(1)(a)(i), described the offense as the intentional engagement "in sexual intercourse, by forcible compulsion, with another person[.]" *See supra* note 2.[5]

Yet it cannot be inferred from the substitution of "forcible compulsion" for "without the consent and against the will of the victim" that consent was no longer considered a defense to the crime. For a provision of the Penal Code reiterates "the general view that the victim's consent to the defendant's conduct . . . is a defense if it negatives an element of the offense (e.g., consent to sexual intercourse on charge of rape)[.]" HRS § 702–233 (1985), Commentary. We agree with the framers of the code that testimony of the victim's consensual attitude, if worthy of belief, could only have a tendency to refute evidence that she was forcibly compelled to engage in sexual intercourse.[6]

## B.

The State, however, would have us rule the defendant was not entitled to an instruction on consent since he did not admit having intercourse

---

[4] The section read as follows:

**Rape; penalty.** Whoever commits a rape, that is, ravishes or has carnal intercourse with any female, by force and against her will, shall be imprisoned at hard labor for life not subject to parole, or at hard labor for life subject to parole, or any number of years.

[5] The language of HRS § 707–730 repealed thereafter, and HRS § 707–730(1)(a) now reads:

**Sexual assault in the first degree.** (1) A person commits the offense of sexual assault in the first degree if:
(a) The person knowingly subjects another person to an act of sexual penetration by strong compulsion[.]

But the issue before us does not require an interpretation of the section as amended.

[6] We by no means suggest that mere submission to the act constitutes consent. "Use of force may cause the [victim] to submit to the will of the [aggressor], but this is physical submission and not consent. Consent is an operation of the mind rather than one of the body. It implies a positive mental attitude on the part of the person granting consent." Bassiouni, *Substantive Criminal Law* § 14.1.5, at 285 (1978).

with the complaining witness and denied "any penetration whatsoever," "the testimony of numerous impartial witnesses[]" disproved consent, "the victim's recitation of the events was consistent" with the injuries she sustained, and "the evidence of sperm in the victim supported her testimony that" there was penetration. It maintains "the instructions given to the jury were adequate and based upon the evidence adduced at trial." We cannot say the State's theses are utterly devoid of merit. We are convinced, nevertheless, that an instruction covering consent was in order.

The State implies the trial court's decision not to instruct the jury on consent was correct because the defendant ought not be allowed both to deny there was intercourse or penetration and to rely on consent as a defense. Still, as we observed, the defendant in a criminal case tried before a jury "is entitled to an instruction on every defense or theory of defense having *any* support in the evidence, . . . no matter how weak, inconclusive or unsatisfactory the evidence may be." *State v. O'Daniel*, 62 Haw. at 527–28, 616 P.2d at 1390 (citations omitted) (original emphasis). But, of course, "where evidentiary support for the asserted defense, or for any of its essential components, is clearly lacking, it would not be error for the trial court either to refuse to charge on the issue or to instruct the jury not to consider it. *See United States v. Gosser*, 339 F.2d 102, 109–110 (6th Cir. 1964)." *State v. Horn*, 58 Haw. 252, 255, 566 P.2d 1378, 1380–81 (1977). The applicable test, therefore, is one of a presence or an absence of evidentiary support for a defense, not one of a consistency of defenses.

"It is quite true that a defendant has the right to argue inconsistent defenses . . . ," *Johnson v. United States*, 426 F.2d 651, 656 (D.C. Cir. 1970), *cert. dismissed*, 401 U.S. 846 (1971); and he would be entitled to have the jury instructed on ostensibly inconsistent theories of defense if there is evidence supporting the theories. *Mathews v. United States*, 485 U.S. 58, ____, 108 S. Ct. 883, 886 (1988) (denial of one or more elements of the offense and entrapment); *Stevenson v. United States*, 162 U.S. 313, 322 (1896) (manslaughter and self–defense); *cf. Johnson v. United States, supra* (the defense in a rape case was permitted to argue that the act did not take place and that the victim consented). He would be entitled also to an instruction on a defense fairly raised by the evidence, though it may be inconsistent with the defense he advanced at trial. *State v. Santiago*, 53 Haw. 254, 271–72, 492 P.2d 657, 667–68 (1971); *State v. Irvin*, 53 Haw. 119, 121, 488 P.2d 327, 328 (1971). A seeming inconsistency of defenses thus did not preclude an instruction on consent here.

Nor was there reason not to give an instruction because evidence of "sexual intercourse, by forcible compulsion" was overwhelming. Though "[t]he evidence might appear to the [trial] court to be simply overwhelming [on an issue], so long as there was some evidence relevant to the issue . . . , the credibility and force of such evidence must be for the jury, and cannot be [a] matter of law for the decision of the court." *Stevenson v. United States*, 162 U.S. at 315; *see also State v. Warner*, 58 Haw. 492, 497, 573 P.2d 959, 962–63 (1977); *Territory v. Alcantara*, 24 Haw. 197, 205 (1918). And we are obliged to "construe the evidence in the case in a light most favorable to the appellant in determining whether or not the instruction should [have been] given." *State v. O'Daniel*, 62 Haw. at 528, 616 P.2d at 1390–91 (citations omitted). Viewing the evidence in this light, we would have to say there was evidence to support the defense.

The State's alternative position that "the instructions given . . . were adequate[,]" however, is not one we can lightly dismiss. That the "refusal or giving of requested instructions must be interpreted, or considered, in connection with the entirety of the court's charge to the jury[]" is a well-settled principle. *State v. Travis*, 45 Haw. 435, 437, 368 P.2d 883, 885 (1962) (quoting *Territory v. Aquino*, 43 Haw. 347, 380 (1959); *accord State v. Motta*, 66 Haw. 254, 258, 659 P.2d 745, 749 (1983)). Where the charge given by the trial court apprised the jury of the State's burden of proving beyond a reasonable doubt every material element of the crime charged, including that of the identity of the defendant as the person responsible for the crime, we held the omission of specific instructions on the alibi defense presented by the appellant was not error. *State v. Cordeira*, 68 Haw. 207, 212, 707 P.2d 373, 377 (1985). The alibi defense, we said, "was meant to raise a doubt [about] the identity of the culprit[]" and "the court's instructions dealt adequately with this aspect of the case[.]" *Id.* Since the defense here was meant to raise a doubt that Camille Springer was forcibly compelled to engage in intercourse and the jury was advised of the State's heavy burden with respect to forcible compulsion, the instructions in this case arguably were adequate too.

But in *State v. Cordeira*, we found upon a review of the record that the instructions tendered by the defendant "could have had a burden-

shifting effect." *Id.* at 211, 707 P.2d at 377.[7]   Were they given, the charge to the jury would not have "fairly and clearly presented the law as favorable to the defendant as he was entitled to under the testimony and evidence in the case." *Territory v. Aquino*, 43 Haw. at 380.  Consequently, "[w]e [could not] fault the trial court for rejecting [the] instructions[.]" *State v. Cordeira*, 68 Haw. at 211, 707 P.2d at 376–77.  Here, Defendant's Instruction No. 5 merely reiterated HRS § 702–233; it carried no suggestion of his burden to show there was consent.

Viewing the testimony of the defendant and Ed Calderon in the most favorable light, as we must, we conclude there was evidentiary support for the proposition that defendant was granted consent by the complaining witness to engage in sexual intercourse prior to the acts alleged in the rape counts.  Thus, he was entitled to an instruction on consent, and the trial court erred in rejecting Defendant's Instruction No. 5.

The judgment of the circuit court is vacated, and the case is remanded for a new trial on the two counts of Rape in the First Degree.

*Charles B. Fey*, for appellant.

*G. Cher Foerster*, Deputy Prosecuting Attorney, for appellee.

---

[7] We found:

> The instructions tendered by the defendant . . . spoke of "his absence from the scene of the crime, if proved" and of a "failure to establish an alibi."

68 Haw. at 211, 707 P.2d at 376.

> This, we felt,

> might have suggested to some jurors, at least, that the defendant had a "special responsibility with respect to [the alibi]." *State v. Garvin*, 44 N.J. at 273, 208 A.2d at 404.

*Id.* at 211, 707 P.2d at 376 (footnote omitted).