913 P.2d 553

STATE of Hawai'i, Plaintiff–Appellee,

v.

Roger PAVAO, Defendant–Appellant.

No. 17379.

Intermediate Court of Appeals of Hawai'i.

March 11, 1996.

ACOBA, Judge.

Defendant–Appellant Roger Pavao (Defendant) was found guilty of intentionally, knowingly or recklessly causing bodily injury to another person in violation of Hawai'i Revised Statutes (HRS) § 707–712(1)(a) (1993),[1] the offense of assault in the third degree, following a District Court of the First Circuit bench trial completed on March 22, 1993. His sole point on appeal is that the trial court erred in failing to acquit Defendant because there was insufficient evidence to negative his defense of use of force for the protection of other persons under HRS § 703–305 (1993). We affirm.

The following facts were adduced at trial. On January 31, 1993, Defendant agreed to drive his brother, Patrick Pavao (Patrick), to Jane Andaya's (Jane) apartment. Jane was Patrick's girlfriend with whom he had children. Jane related that she and Patrick had a "break up" approximately one to two weeks before.

Jane testified that at approximately 7:00 a.m., while she was sleeping in her bedroom, she heard the doorbell ring. "[B]y the time [she] got up," she saw Patrick coming "through [her] kitchen window" into her apartment. Jane stated that Patrick "pushed" her to the side and "went straight" to her bedroom where he saw Jane's current boyfriend, Jason Fung (Jason). After "saying some stuff[ ]" to Jason, Patrick then went back to the front door of the apartment to let Defendant in. Jane related that she locked the bedroom door, but that Patrick and Defendant "started kicking the door" and broke it. After gaining access to the bedroom, Patrick and Defendant "just [began] hitting, . . . punching and kicking" Jason, who was on the bed. She further testified that after the incident, Jason had "bruises and lumps" on his head.

Jason testified that he was in the bedroom standing behind the door when it broke.

Catherine H. Remigio, Deputy Public Defender, on the briefs, Honolulu, for defendant-appellant.

Glenn J. Kim, Deputy Prosecuting Attorney, City and County of Honolulu, on the brief, Honolulu, for plaintiff-appellee.

Before BURNS, C.J., and ACOBA and KIRIMITSU, JJ.

1. Hawai'i Revised Statutes (HRS) § 707–712 (1993) states:
§ 707–712 **Assault in the third degree.** (1) A person commits the offense of assault in the third degree if the person:
(a) Intentionally, knowingly, or recklessly causes bodily injury to another person; or
(b) Negligently causes bodily injury to another person with a dangerous instrument.
(2) Assault in the third degree is a misdemeanor unless committed in a fight or scuffle entered into by mutual consent, in which case it is a petty misdemeanor.

Patrick and Defendant entered the room and started "assaulting" him. Jason could not recall who entered the bedroom first. Jason explained that the assault consisted of "[m]ultiple hits to the head and body" but could not remember who struck him first or last. Jason related that while he was still standing, Defendant was "punching [him] with [Defendant's] fists" in the head and back, and Patrick was "doing the same." After Jason was "overthrown" and was "face down" on the bed, Patrick and Defendant yelled at and hit him some more. Defendant looked "real[ly] angry" and told Jason "not to mess with them." Jason stated that, "[o]nce I hit the bed [Defendant] was already telling [Patrick], 'let's go already' and [Defendant] was already up." Jason was hit "maybe ten to fifteen times, maybe twenty."

The defense called Defendant and Patrick to the stand. Patrick testified that he was "[k]ind of worried" after he called Jane's apartment and received no answer. He asked Defendant to drive him to her apartment. Patrick later let Defendant into Jane's apartment. Patrick stated that he did not see Defendant break anything in the apartment or hit Jason at any time. The only time Defendant made physical contact with Jason was when Defendant tried to stop Jason "[f]rom fighting."

Defendant testified that he drove his brother to Jane's apartment and waited in the parking lot for approximately five minutes. Defendant did not receive the customary signal to leave from Patrick[2] and instead heard loud voices. Defendant left the car, and when he began climbing the stairwell, he identified the voices as belonging to Patrick and Jane. He entered Jane's apartment "[t]hrough the door" which was "wide open." Defendant found Jane outside her bedroom door. Jane was crying and told Defendant that "Jason was in the apartment[,]" and that "it was over between Pat and her[.]" Defendant did not know that Patrick and Jane were no longer together until Jane told him.

Defendant related that his brother "kick[ed] down the door and Jason and [Pat-

rick] started going at it." Defendant "ran over to the bedroom and tried to stop them." When Jason and Patrick did not stop, Defendant stated that he "grab[bed] [his] brother and told him let's go all ready [sic], what are you doing?" Defendant claimed he did not strike Jason at any time.

The trial court made the following ruling:

With respect to the assault charge, the testimony of both Jane and Jason, they both testified that [Defendant] and Patrick were both punching and kicking Jason and Jason was injured and Jason also testified that [Defendant] said, "Don't mess with them" or [Defendant] might have entered the bedroom trying to pull Patrick off but in the course of pulling him off he might have gone too far whatever the case may be.

The Court finds both Jane's and Jason's testimony is [sic] credible. And the Court is satisfied beyond a reasonable doubt that Defendant did assault Jason at the time so the Court finds [Defendant] guilty as charged.

The Court finds that there was a requisite intent if [Defendant] went in to help [Defendant's] brother without knowing the full facts and so the Court finds [Defendant] guilty of the assault charge.

## I.

■ Initially, the prosecution maintains that Defendant may not rely on the justification defense because the use of this defense would be inconsistent with Defendant's testimony that he did not hit Jason. This contention is incorrect.

[T]he defendant in a criminal case tried before a jury is entitled to an instruction on every defense or theory of defense having *any* support in the evidence, no matter how weak, inconclusive or unsatisfactory the evidence may be.... The applicable test, therefore, is one of presence or an absence of evidentiary support for a defense, not one of a consistency of defenses.... *[A] defendant has the right to*

---

**2.** Defendant explained that because there was "no parking" at Jane's apartment, he usually dropped Patrick off and waited for Patrick's "sig-

nal for [Defendant] to leave." If Jane was not home, then Defendant and Patrick would leave together.

*argue inconsistent defenses* and he would be entitled to have the jury instructed on ostensibly inconsistent theories of defense if there is evidence supporting the theories. *He would be entitled also to an instruction on a defense fairly raised by the evidence, though it may be inconsistent with the defense he advanced at trial.*

*State v. Lira,* 70 Haw. 23, 29, 759 P.2d 869, 873 (emphases added) (citations, internal quotation marks and ellipses omitted), *reconsideration denied,* 70 Haw. 662, 796 P.2d 1005 (1988). In *Lira,* the court held that the defendant in a rape case who denied having intercourse with the complaining witness, was entitled to an instruction on the alleged consent of the complaining witness notwithstanding the "seeming inconsistency of defenses[.]" *Id.*

Since consideration of a defense depends on the "presence ... of evidentiary support for a defense," *id.,* the same rule would apply whether the fact finder was a judge or a jury. *See State v. Gabrillo,* 10 Haw.App. 448, 459 n. 7, 877 P.2d 891, 896 n. 7 (1994) ("[a]s the issue before this court is the ultimate issue of guilt, the standard on appeal is whether there was substantial evidence to support the conclusion of the trier of fact regardless of whether there was a trial by judge or jury."); HRS § 701–115(2) (1993) (defenses are considered by the "trier of fact"). Thus, Defendant was not precluded from asserting inconsistent defenses.

## II.

### A.

■ HRS § 703–305(1) (1993) sets forth the circumstances justifying the use of force for the protection of others:

(1) Subject to the provisions of this section and of section 703–310, the use of force upon or toward the person of another is justifiable to protect a third person when:

(a) Under the circumstances as the actor believes them to be, the person whom the actor seeks to protect would be justified in using such protective force; and

(b) The actor believes that the actor's intervention is necessary for the protection of the other person.

The defense "permits a person to use force to protect another person when the actor believes the other person would have been justified in using force to protect himself [or herself] and he [or she] believes that [t]his intervention is necessary to protect the other person." Commentary on HRS § 703–305 (1993). The term " 'believes' means reasonably believes." HRS § 703–300 (1993). This establishes a " 'reasonable man standard' or objective standard in making a determination of whether a defense of justification is available." Supplemental Commentary on HRS § 703–310 (1993). However, as HRS § 703–305 states, the attendant circumstances must be viewed from a subjective point of view, that is, "as the [defendant] believes them to be[.]" Hence, under HRS § 703–305, the trier of fact must determine whether, from the objective point of view of a reasonable person, the defendant's use of force was necessary for the protection of a person who would be justified in using such force, under the circumstances as the defendant subjectively believes them to be. *Cf. State v. Pemberton,* 71 Haw. 466, 477, 796 P.2d 80, 85 (1990) ("standard for judging the reasonableness of a defendant's belief for the need to use deadly force is determined from the point of view of a reasonable person in the defendant's position under the circumstances as he [or she] believed them to be") (citation omitted); *State v. Lubong,* 77 Hawai'i 429, 433, 886 P.2d 766, 770 (App.1994) ("evidence must be assessed from the standpoint of a reasonable person in the defendant's position under the circumstances as the defendant subjectively believed them to be at the time he or she tried to defend himself or herself") (citation omitted).

Thus, whether Defendant was justified in using force against Jason rests on whether a reasonable person in Defendant's position would reasonably believe that Patrick would be justified in using protective force under the circumstances known to Defendant.

### B.

The State also contends that, because Defendant testified that he did not strike Jason,

Defendant, therefore, failed to raise the subject defense.

■ To the contrary, a defendant is entitled to have the trier of fact consider a defense having any support in the evidence no matter how weak, inconclusive, or unsatisfactory the evidence involved.

Our cases have firmly established that "a defendant is entitled to an instruction on every defense or theory of defense having *any* support in the evidence, provided such evidence would support the consideration of that issue by the jury, no matter how weak, inconclusive, or unsatisfactory the evidence may be."

*State v. Maelega*, 80 Hawai'i 172, 178–79, 907 P.2d 758, 764–65 (1995) (emphasis omitted) (quoting *State v. Pinero*, 75 Haw. 282, 304, 859 P.2d 1369, 1379 (1993)). Thus, in the analogous situation where there is evidence before the jury suggesting the defense of self-defense, a defendant is "entitled to an instruction on that issue no matter how weak, unsatisfactory or inconclusive the testimony might have appeared to the court." *State v. Riveira*, 59 Haw. 148, 153–54, 577 P.2d 793, 797 (1978) (citations omitted).[3] Again, the same rule would apply whether the fact finder was a judge or a jury since the obligation to consider defenses rests with the trier of fact. HRS § 701–115. Here, despite Defendant's testimony that he did not strike Jason, evidence of a potential justification defense under HRS § 703–305 was apparent from the defense's case. *See* discussion *infra.* Defendant was, therefore, entitled to the trial court's consideration of the defense no matter how weak, unsatisfactory or inconclusive the evidence appeared. *See Maelega*, 80 Hawai'i at 178–79, 907 P.2d at 764–65; *Riveira, supra.*

### C.

■ Once the defense is raised, the prosecution "must prove beyond a reasonable doubt, facts which negative the defense." Commentary on HRS § 703–301 (1993). Es-

sentially, the prosecution does this when the trier of fact believes its case and disbelieves the defense. Commentary on HRS § 701–115 (1993); *Gabrillo*, 10 Haw.App. at 456–57, 877 P.2d at 895. Here, the trial court, in finding the prosecution's witnesses "credible," concluded Defendant had the "requisite intent" to commit the offense of assault and that Defendant in trying to separate Patrick and Jason "might have gone too far." Accordingly, the trial court determined that Defendant's evidence did not raise any reasonable doubts of Defendant's guilt. In that event, we are required to sustain the conviction "so long as there is substantial evidence to support the requisite finding for conviction." *Gabrillo*, 10 Haw.App. at 458, 877 P.2d at 895 (citations omitted). Substantial evidence is "credible evidence which is of sufficient quality and probative value to enable a [person] of reasonable caution to support a conclusion." *State v. Batson*, 73 Haw. 236, 248, 831 P.2d 924, 931, *reconsideration denied*, 73 Haw. 625, 834 P.2d 1315 (1992). We examine the evidence pertaining to the HRS § 703–305 defense in light of the State's countervailing evidence to determine whether there was substantial evidence to support the trial court's finding of guilt.

### D.

The defense claimed fails for several reasons.

■ Jane and Jason both related that Patrick entered the apartment uninvited, knocked down the bedroom door and along with Defendant, assaulted Jason. These circumstances alone would not give rise to a reasonable belief that Patrick was in need of protection. Under Patrick's limited account of what occurred, Defendant did make physical contact with Jason in attempting to "stop" Jason from fighting. Patrick's account would support an inference that Defendant used force on Jason even though there was no "hitting" since "force," as defined

---

**3.** In *State v. Riveira*, 59 Haw. 148, 153 n. 4, 577 P.2d 793, 796 n. 4 (1978), the trial court had refused to give the defendant's requested jury instruction on the ground that "there is no evidence whatsoever to justify instructions on self[-]defense." The supreme court found that the trial court "committed reversible error in refusing to instruct the jury on the law of self[-]defense." *Id.*

under HRS § 703–300 (1993),[4] includes "any restraint, bodily impact, ... or the threat thereof" to a person. However, neither Patrick's account nor Defendant's testimony about the circumstances as Defendant knew them to be would support any inference that Patrick was in any need of protection at the time Defendant intervened.

Defendant's own testimony was that Patrick kicked down the bedroom door, Patrick and Jason started fighting, Defendant tried to stop them, and Defendant grabbed his brother. Defendant's own account indicates that Patrick was the aggressor, or, at the least, that there was a mutual affray which would not reasonably require the intervention of Defendant to protect Patrick. At the point when Defendant entered the apartment, the circumstances known to him were simply that, while he was talking to Jane, Patrick kicked down the bedroom door and started fighting with Jason.

A [ (DEFENDANT) ] At that point I think he was in the bedroom because at that point I was talking to Jane.

Q [ (DEFENSE COUNSEL) ] And then what happened next?

A My brother went kick [sic] down the door and Jason and my brother started going at it [sic]. So I ran over to the bedroom and tried to stop them. They didn't want to stop so I went grab my brother and told him let's go all ready [sic], what are you doing?

Certainly, nothing in Defendant's testimony indicates that the circumstances warranted a belief that Patrick required immediate protection from any unlawful force employed by Jason.

Finally, HRS § 703–305 extends the defense of the use of physical force to protect another person "on the same terms as the defense is available for the use of force in self-protection." Commentary on HRS § 703–305 (1993). In that respect, the defense of use of force in self-protection under HRS § 703–304 (1993) "requires a [reasonable] belief by the actor that the use of protective force is actually necessary[.]"

Commentary on HRS § 703–304 (1993). None of the circumstances the witnesses related would permit a reasonable belief that Patrick himself needed to use force of a protective nature in self-defense against Jason. Therefore, Defendant would not have been justified in using force that Patrick himself was not justified in using, as the defense applies only when the third person being defended could himself or herself legitimately employ force. We hold that, under the circumstances as Defendant believed them to be, a reasonable person would not reasonably believe that Patrick, the person sought to be protected, would be justified in using protective force against Jason, the complaining witness. Consequently, we conclude that there was substantial evidence supporting the trial court's finding of guilt.

### III.

Accordingly, the May 10, 1993 judgment of Defendant's conviction is affirmed.

---

4. HRS § 703–300 (1993) defines "force" as "any bodily impact, restraint, or confinement, or the

threat thereof."