108 P.3d 966

**In the Interest of John DOE, Born on November 3, 1986, a Minor.**

**No. 26627.**

Supreme Court of Hawai'i.

March 23, 2005.

Dayna–Ann A. Mendonca, Deputy Public Defender, on the briefs, for Minor–Appellant.

James M. Anderson, Deputy Prosecuting Attorney, City & County of Honolulu, on the briefs, for State of Hawaii–Appellee.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by ACOBA, J.

We hold that, although Minor–Appellant[1] did not correctly appeal from the May 21, 2004 dispositional order as required by Hawai'i Revised Statutes (HRS) §§ 571–11(1) (1993)[2] and 571–54

---

1. For purposes of preserving confidentiality, Minor–Appellant is referred to as "Minor."

2. HRS § 571–11(1) states as follows:

**Jurisdiction; children.** Except as otherwise provided in this chapter, the [family] court shall have exclusive original jurisdiction in proceedings:

(1993),[3] *see In re Jane Doe,* 105 Hawai'i 505, 506–07, 100 P.3d 75, 76–77 (2004), we decide this appeal, inasmuch as Minor may rely on the constitutional guarantee against ineffective assistance of counsel. As to the merits of the appeal, we further hold that (1) there was substantial evidence to support the decision of the family court of the first circuit (the family court)[4] that Minor acted intentionally or knowingly and (2) that there was substantial evidence negating the defense of self-defense.

## I.

On February 25, 2004, State of Hawai'i–Appellee (the prosecution) filed a petition against Minor in the family court, alleging that Minor committed the offense of assault in the second degree, HRS § 707–711(1)(a) (1993).[5] Trial was held on April 14, 2004. The family court found that the material allegations of the petition were proved beyond a reasonable doubt and adjudicated Minor a law violator. The prosecution then announced that it would be seeking restitution for the complainant's medical expenses of $4,545.15 for which the complainant's out-of-pocket expenses had yet to be determined. The family court (1) committed Minor to the youth correctional facility until age nineteen, (2) ordered Minor to appear for a further disposition hearing on May 21, 2004, and (3)

granted the prosecution leave to file a motion for restitution to be heard on May 21, 2004. A decree to this effect was entered by the family court on April 14, 2004. The prosecution thereafter filed a motion for restitution on May 18, 2004, seeking restitution for out-of-pocket medical expenses of $468.46.

Meanwhile, on April 30, 2004, Minor, through counsel, filed a "Motion for Reconsideration of Adjudication," seeking reconsideration of the April 14, 2004 adjudication on the ground of insufficient evidence of an intent to cause substantial bodily injury. Reconsideration was not sought as to the commitment to the youth facility or the possible payment of restitution.

On May 21, 2004, the family court heard the motion for reconsideration and denied it. The family court then conducted the further disposition hearing and granted the prosecution's motion for restitution in the partial amount of $128.44. At the conclusion of the hearing, the following three orders were entered: (1) an "Order Denying Motion to Reconsider Adjudication"; (2) an "Order Granting in Part Motion for Restitution," requiring Minor to make restitution of $128.44 within thirty days; and (3) an "Order Re: Further Disposition" declaring that all prior consistent orders shall remain in full force and effect.

(1) Concerning any person who is alleged to have committed an act prior to achieving eighteen years of age which would constitute a violation or attempted violation of any federal, state, or local law or municipal ordinance. Regardless of where the violation occurred, jurisdiction may be taken by the court of the circuit where the person resides, is living, or is found, or in which the offense is alleged to have occurred.

3. HRS § 571–54 states in relevant part as follows:

**Appeal.** An interested party aggrieved by any order or decree of the court may appeal to the supreme court for review of questions of law and fact upon the same terms and conditions as in other cases in the circuit court. . . .

. . . .

An order or decree entered in a proceeding based upon section 571–11(1), (2), (6), or (9) shall be subject to appeal to the supreme court only as follows:

Within twenty days from the date of the entry of any such order or decree, any party directly affected thereby may file a motion for

reconsideration of the facts involved. . . . The findings of the judge upon the hearing of the motion and the judge's determination and disposition of the case thereafter, and any decision, judgment, order, or decree affecting the child and entered as a result of the hearing on the motion shall be set forth in writing and signed by the judge. Any party deeming oneself aggrieved by any such findings, judgment, order, or decree shall have the right to appeal therefrom to the supreme court upon the same terms and conditions as in other cases in the circuit court[.]

4. The Honorable Paul T. Murakami presided.

5. HRS § 707–711(1)(a), concerning assault in the second degree, states as follows:

(1) A person commits the offense of assault in the second degree if:
(a) The person intentionally or knowingly causes substantial bodily injury to another[.]
"Substantial bodily injury" is defined, in pertinent part, as "bodily injury which causes . . . [a] bone fracture[.]" HRS § 707–700 (Supp.2004).

Notice of appeal was filed by Minor on June 16, 2004. Findings of fact and conclusions of law as to the adjudication, but not as to the disposition, were entered for the appeal by the family court on July 29, 2004.

## II.

■ Although the parties do not raise the issue of jurisdiction, " 'an appellate court has . . . an independent obligation to ensure jurisdiction over each case and to dismiss the appeal *sua sponte* if a jurisdictional defect exists.' " *In re Robert's Tours & Transp., Inc.*, 104 Hawai'i 98, 101, 85 P.3d 623, 626 (2004) (quoting *State v. Graybeard*, 93 Hawai'i 513, 516, 6 P.3d 385, 388 (App.2000)).

■ In family court proceedings, appeals are governed by HRS § 571–54, which provides that "[a]n interested party aggrieved by any order or decree of the [family] court may appeal to the supreme court for review of questions of law and fact upon the same terms and conditions as in other cases in the circuit court[.]" "[U]nder HRS § 571–54, '[the supreme court] may hear appeals *from only final orders, or decrees, except as otherwise provided by law*.' " *In re Doe*, 102 Hawai'i 246, 249, 74 P.3d 998, 1001 (2003) (emphasis in original) (quoting *In re Doe*, 77 Hawai'i 109, 114, 883 P.2d 30, 35 (1994) (quoting HRS § 641–1(a) (1985))).

■ The final order or decree appealable under HRS § 571–54 is the order or decree that determines the ultimate rights and liabilities of the parties. *In re Doe*, 102 Hawai'i at 249–50, 74 P.3d at 1001–02. In the context of juvenile delinquency proceedings under HRS § 571–11(1), the appealable final order or decree is the *judgment of disposition entered upon the termination of the disposition hearing*. *Id.* at 250, 74 P.3d at 1002 (citing Hawai'i Family Court Rules (HFCR) Rule 151 (2000) ("Upon termination of the disposition hearing, the court shall enter an appropriate judgment of disposition.")). Thus, in the context of juvenile delinquency proceedings under HRS § 571–11(1), the motion for reconsideration required by HRS § 571–54 is a motion for reconsideration of the judgment of disposition entered upon the termination of the

disposition hearing. *Id.* at 252, 74 P.3d at 1004.

In the instant case, the appealable final order or decree on the petition for second degree assault was the order disposing of the petition entered on May 21, 2004 at the conclusion of the further disposition hearing, which was appealable upon the filing of a motion for reconsideration thereof. Minor moved for reconsideration of the April 14, 2004 adjudication rather than the May 21, 2004 further disposition. The motion for reconsideration was filed after entry of the disposition committing Minor to the youth facility and after announcement of the possible disposition of payment of restitution, but the motion did not seek reconsideration of those dispositional matters and the family court did not reconsider those dispositional matters. Absent a motion for reconsideration of the disposition, the procedural requirements for HRS § 571–54 were not met. Consequently, appellate jurisdiction would ordinarily be lacking.

## III.

■ Appellant is a "law violator" because he engaged in acts which, if committed by an adult, would constitute a "crime." *In re Jane Doe*, 95 Hawai'i 340, 349, 22 P.3d 987, 996 (App.1999), *rev'd on other grounds* by 96 Hawai'i 73, 26 P.3d 562 (2001). We have recognized that certain constitutional guarantees afforded adults should be extended to juvenile law violator cases. *See, e.g., In re Doe*, 70 Haw. 32, 36–38, 761 P.2d 299, 302–03 (1988) (observing that procedures employed in juvenile delinquency hearing "must measure up to the essentials of due process" and extending the Sixth Amendment right to confrontation through cross-examination to such hearings); *In re Doe*, 54 Haw. 647, 651–52, 513 P.2d 1385, 1388–89 (1973) (recognizing that "[w]hile there may be some variance between the constitutional rights of minors and those of adults," due process guarantees have "equal application" to minors and adults and that city ordinance affecting juveniles must "give proper notice as to what conduct constitutes unlawful activity").

Where a criminal case appeal has been found defective because of counsel's failure to

properly file it, we have nevertheless permitted the appeal to proceed in light of the right to effective counsel. *See, e.g., State v. Aplaca,* 96 Hawai'i 17, 23, 25 P.3d 792, 798 (2001) (allowing appeal after notice of appeal was untimely filed by first appellate counsel because defendant is "entitled, on his first appeal, to effective counsel who may not deprive him of his appeal by failure to comply with procedural rules" (internal quotation marks and citations omitted)); *State v. Caraballo,* 62 Haw. 309, 316, 615 P.2d 91, 96 (1980) (permitting appeal filed after the deadline where defendant had withdrawn his initial appeal based upon counsel's erroneous advice); *State v. Erwin,* 57 Haw. 268, 270, 554 P.2d 236, 238 (1976) (holding that court-appointed counsel's failure to file a timely appeal for an indigent criminal defendant does not foreclose the defendant's right to appeal his conviction).

Because effective assistance of counsel is fundamental to a fair trial, it should be guaranteed in juvenile law violator proceedings as have other fundamental criminal case guarantees. Other states have acknowledged the right to effective counsel in juvenile proceedings. *In re Anthony,* 117 Cal.App.4th 718, 11 Cal.Rptr.3d 865, 867 (2004) (concluding that juvenile defendant "was denied effective assistance of counsel by counsel's failure to file an appeal from the judgment" in a juvenile adjudication proceeding); *State ex rel. Juvenile Dep't of Multnomah County,* 191 Or.App. 17, 80 P.3d 147, 150 (2003) (adopting and applying federal and state constitutional standards for ineffective assistance of counsel in adult criminal cases to case where "youth alleges that he received constitutionally inadequate assistance of trial counsel" at juvenile adjudication hearing).

This court recently held in the context of juvenile delinquency proceedings under HRS § 571–11(1), that the appealable final order or decree is the "judgment of disposition" entered upon the termination of the disposition hearing. *In re Doe,* 102 Hawai'i at 250, 74 P.3d at 1001 (citing HFCR Rule 151

("Upon termination of the disposition hearing, the court shall enter an appropriate judgment of disposition.")). However, that decision was not concerned with the right to effective counsel. Thus, that decision would not pose an impediment to this court's allowance of family court appeals defectively filed by counsel. *See In re Jane Doe,* 105 Hawai'i at 507, 100 P.3d at 77 (Acoba, J., concurring) (concurring with per curiam opinion but reserving question of whether "untimely motions for reconsideration and appeals from the family court by juvenile 'law violators' ... [was] governed by ... decision"). As Hawai'i Rules of Appellate Procedure (HRAP) Rule 4(b) [6] will not preclude untimely appeals in criminal cases where effective assistance of counsel is implicated by the untimely notice of appeal, so misapprehension of HRS § 571–54 should not nullify appeals in juvenile law violator cases. Accordingly, the right to effective assistance of counsel should apply in juvenile "law violator" cases as in adult criminal cases, and a defective appeal caused by counsel, as is the case here, does not invalidate the appeal.

## IV.

We consider, then, the points raised on appeal. Minor maintains, first, that the prosecution failed to adduce substantial evidence that Minor possessed the requisite state of mind to support the charge of assault in the second degree and second, that the prosecution failed to adduce substantial evidence to prove beyond a reasonable doubt the facts negating the justification defense of self-protection. At trial, as set forth by the parties, the following pertinent evidence was adduced.

On January 16, 2004, Minor, Jean Rainier Persenaire (Persenaire) and Chris Putt (Putt) were at a hotel party in Waikīkī. They all consumed alcohol. At about 2:00 a.m., Persenaire and Putt left the party and went to the Honolulu Zoo parking lot. Minor was also in the zoo parking lot. Minor shone

---

6. HRAP Rule 4(b) (2004), entitled "Appeals in criminal cases," provides in relevant part as follows:

(1) **Time and place of filing.** In a criminal case, the notice of appeal shall be filed in the

circuit, district, or family court within 30 days after the entry of the judgment or order appealed from.

a flashlight, the beam from which illuminated Persenaire's face. Putt testified that Minor asked Persenaire if Persenaire "ha[d] a problem[.]" According to Putt, Persenaire walked up to Minor and replied, "Yeah, I have a problem with the flashlight in my face ... something like that." Persenaire testified that he could not remember Minor asking him whether he "had a problem[,]" but agreed that Minor had asked him if he wanted to fight, to which he replied, "Yeah, sure."

Next, Putt heard Minor ask Persenaire if Persenaire was serious, to which Persenaire replied, "Yeah." Putt then saw Minor punch Persenaire in the left side of his jaw. Putt did not see Persenaire touch Minor and did not "recall a bump." Surprised, Putt pushed Minor back and asked him, "What was that for, man?" Minor and Persenaire "didn't exchange any words or touch each other after that."

According to Persenaire, Minor asked Persenaire if he wanted to "fight." Persenaire, with a laughing tone in his voice, responded, "Yeah, sure." Minor asked Persenaire if he was serious. Persenaire continued to stare at Minor, within an inch of Minor's face, and Persenaire said, "Yeah." Thereafter, Persenaire, who was standing on a parking median and thus was above Minor, leaned in toward Minor and bumped Minor's chin with his chest. According to Minor, because he believed that he was about to be struck by Persenaire, Minor took a step back and hit Persenaire's left jaw. Putt immediately intervened between Minor and Persenaire. According to Persenaire, the punch was "sore, really painful." Persenaire related he never touched Minor, and did not give Minor permission to strike him. After striking Persenaire, Minor walked away and stood watching Persenaire from a distance.

Surprised by what had happened, Persenaire drove home. When his jaw did not feel better after four days, Persenaire went to the Queen's Medical Center. Persenaire's jaw was x-rayed at the hospital. Dr. David Haynes diagnosed Persenaire as having a fracture of the left side of the mandible. Dr. Haynes treated Persenaire by wiring shut his jaw, a treatment that lasted four weeks.

At the end of the prosecution's case, the defense moved for a judgment of acquittal on the ground that, because Persenaire did not realize he had "sustained a jaw fracture ... [, Minor could not] have intended to have done that[.]" The trial court denied the motion.

Thereafter, Minor testified on his own behalf. Minor recounted he "shone ... [the flashlight] in [Persenaire's] face, and then [Persenaire] started yelling and telling me to cut it out, knock it off. And then [Persenaire] approached me, and I dropped the flashlight, and I said—I said, 'Oh, do you have a problem with me?' Because he was walking towards me." Minor was standing on the road, but off of the curb. Minor reported he "asked [Persenaire] if he wanted to fight me, because [Persenaire] was, like, about—inches from my face; and then he said, 'Yeah.' And then, from there, I asked him if he was serious. And he just kept looking at me while, like, an inch from my face." Minor related he "thought [Persenaire] was going to hit me. And when he bumped me, I thought he was—he was trying to, you know, come on to me. So I just took a step back and hit him." After striking Persenaire, Minor testified that

> Putt came and pushed me off of him; and then I flew back a little bit, off of the median, to the other side. And then [Putt] asked me what I was doing, and I—I explained to him that I asked [Persenaire] if he was serious, and he said, "Yeah." And then [Putt] asked [Persenaire] if he wanted to fight me, and [Persenaire] said no.

On cross-examination, Minor testified that he "'scummed,' like, maybe" three or four beers and he did not realize he had shined the light into someone's face until Persenaire yelled at him in an angry tone of voice and began walking towards him. Minor stated that Persenaire "was laughing in the beginning." Minor then asked if Persenaire was "serious," and Persenaire replied, "Yeah." According to Minor, Persenaire "stared at me and didn't seem very funny." Although Persenaire did not hit Minor, Minor maintained that Persenaire "leaned in on" Minor while standing on the curb and bumped Minor's lower chin with his chest. In response, Minor declared, "I took a step back, and I swung."

In its closing argument, the defense again moved for a judgment of acquittal on the grounds that (1) the prosecution had failed to prove that Minor intentionally or knowingly caused Persenaire substantial bodily injury, and (2) Minor punched Persenaire in self-defense after Persenaire intimidated Minor by walking up to him, standing above him "very close to the [M]inor[,]" and bumped Minor's chin with his chest.

The court found the testimony of Putt and Persenaire to be "more credible than that of the Minor's[.]" It ruled in pertinent part as follows:

> With regard to the argument as to intentionally or knowingly causing substantial bodily injury, the [c]ourt finds that the amount of force necessary to cause the injury sustained—to wit, a broken jaw, a fractured jaw—was indeed the conscious intent of the [M]inor. *Court can infer that from the circumstances of the events as recited, even if—which the [c]ourt does not, by the way, take as credible—the [M]inor's event—the sequence of events that the [M]inor said took place, if it took place like he recited them,* there was— Mr.—I'm sorry—Mr. Persenaire over him and he felt a bump, rather than bump back or step back, *the [M]inor took a swing, with sufficient force to fracture Mr. Persenaire's jaw. That was over and above what was necessary for self-defense.* So the [c]ourt finds that self-defense has been rebutted by the evidence presented by the [prosecution], by proof beyond a reasonable doubt. Even if the [c]ourt took the [M]inor's version as being credible, which this [c]ourt does not, the *[c]ourt does not believe a bump took place.* The [c]ourt does find, again, though, there was a punch of sufficient force to break this individual's jaw.

(Emphases added.)

On April 30, 2004, Minor filed a motion for reconsideration of adjudication. The family court denied Minor's motion.

## V.

As to Minor's first point, HRS § 702–206 entitled "Definitions of states of mind," provides in relevant part as follows

(1) "Intentionally."

. . . .

(c) A person acts intentionally with respect to a result of his conduct when it is his conscious object to cause such a result.

(2) "Knowingly."

. . . .

(c) *A person acts knowingly with respect to a result of his conduct when it is practically certain that his conduct will cause such a result.*

(Emphasis added.) Minor argues that the prosecution failed to present sufficient evidence that Minor intended to fracture Persenaire's jaw because (1) Minor hit Persenaire only once, (2) Persenaire did not seek any medical attention the same day, (3) Persenaire sought medical help four days after the incident, (4) Dr. Haynes did not make a diagnosis until one to two weeks after the incident, and (5) if Persenaire himself did not know of the effect of the punch, it is improbable that Minor, at the time that he hit Persenaire, had the conscious object to cause such a result or that it was practically certain that this conduct would cause the result.

Minor also argues that there was no substantial evidence that the prosecution proved beyond a reasonable doubt that Minor had not acted in self defense. Minor relies on *State v. Lubong*, 77 Hawai'i 429, 886 P.2d 766 (App.1994), and maintains that he met the two-prong self-protection defense test [7] articulated in that case. As to the first prong, Minor argues that he had a subjective belief that he was required to use force in

---

7. According to *Lubong*, the test for assessing a defendant's self-protection defense sets forth subjective and objective prongs. 77 Hawai'i at 433, 886 P.2d at 770. The "first prong is subjective" and "requires a *determination of whether the defendant had the requisite belief that ... force was necessary to avert* death, *serious bodily inju-*ry, kidnapping, rape, or forcible sodomy." *Id.* (emphases added). The second prong is "objective" and "requires a *determination of whether a reasonably prudent person in the same situation as the defendant would have believed that ... force was necessary for self-protection.*" *Id.* (emphasis added).

self-protection inasmuch as (1) the incident occurred at 2:00 a.m., (2) Persenaire initiated the confrontation by yelling at Minor and approaching him, (3) Persenaire was six-feet-five inches tall, as compared to Minor who was only five-feet-eleven inches tall, and (4) Persenaire stood on the median strip, about five to seven inches above Minor when Persenaire bumped Minor's chin area with his chest.

As to the second prong of *Lubong*, Minor maintains that a reasonably prudent person in Minor's situation would have believed that force was immediately necessary to protect himself from the use of unlawful force by Persenaire because a reasonably prudent person confronted at 2:00 a.m. by a much larger and "upset" person who yelled at him, walked toward him, and stood over him within inches of his face, could reasonably believe that it was necessary to use force to defend himself.

## VI.

▬▬▬ As the prosecution indicates, the test on appeal in reviewing the legal sufficiency of the evidence is whether, when viewing the evidence in the strongest light for the prosecution, substantial evidence exists to support the conclusion of the trier of fact. *State v. Pone*, 78 Hawai'i 262, 265, 892 P.2d 455, 458 (1995). " 'Substantial evidence' as to every essential element of the crime charged is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to reach a conclusion." *State v. Naeole*, 62 Haw. 563, 565, 617 P.2d 820, 823 (1980). The appellate courts will give due deference to the right of the trier of fact "to determine credibility, weigh the evidence, and draw reasonable inferences from the evidence adduced." *Lubong*, 77 Hawai'i at 432, 886 P.2d at 769 (citation omitted). With respect to proof of intent to commit a crime, intent may be proved by circumstantial evidence. *State v. Bui*, 104 Hawai'i 462, 467, 92 P.3d 471, 476 (2004) (citations omitted).

As the prosecution argues, credible evidence was adduced at Minor's trial that Minor shined a flashlight into Persenaire's face. Apparently Persenaire objected to this, and walked over to Minor and asked Minor to put the light away. In response, Minor asked Persenaire if he wanted to fight. In a laughing tone of voice Persenaire replied, "Yeah, sure," thinking that Minor was "making a joke at that point." Minor lowered his flashlight, took a step back, and struck the left side of Persenaire's jaw. According to Persenaire, at that point the punch was "sore, really painful."

Minor did cause Persenaire substantial bodily injury in the form of a bone fracture. The evidence also illustrates that Minor's conduct in striking Persenaire, if not intentional, was knowing; that is, that Minor was aware that he was punching Persenaire, who was not forewarned, in the face. HRS § 702–206(2)(a). Finally, the trial court could infer from the amount of force Minor used to punch Persenaire in the face, that Minor was "aware that it [was] practically certain that his conduct [would] cause [the] result" of substantial bodily injury. HRS § 702–206(2)(c) (1993). As to whether the prosecution disproved Minor's claim of self-defense beyond a reasonable doubt, "[e]ssentially, the prosecution does this when the trier of fact believes its case and disbelieves the defense." *State v. Pavao*, 81 Hawai'i 142, 146, 913 P.2d 553, 557 (App.1996) (citations omitted). As to Minor's defense of self-defense, in finding Minor's testimony incredible, the court specifically found that no bump occurred and that Persenaire was not the aggressor. In that regard, we will afford "due deference" to the trier of fact's determination of credibility, weighing of the evidence, and drawing of reasonable inferences from the evidence adduced as to this matter. *Lubong*, 77 Hawai'i at 432, 886 P.2d at 769.

## VII.

Minor also argues that "[t]he court erroneously applied civil liability principles in finding that Minor had the requisite state of mind[.]" He relies on the first and last sentences of the court's ruling quoted *supra* and the following statement by the court in denying Minor's motion for reconsideration.

· Court also observed that *this is an opposite to the eggshell skull case that's com-*

monly given to us in law school, in Torts. The fact that [Minor]—I'm sorry—that Mr. Persenaire did not go down after he was hit, he's probably—he was stronger than anticipated. But that doesn't cut against what was in the mind of [Minor] when he threw the punch. Given the force, given the fact that there was indeed a broken jaw, it is sufficient to indicate to the [c]ourt that [Minor] had the intent to put the complainant down[.]

(Emphasis added.) Minor declares that the court was applying the tort concepts that " '[l]iability in tort for an injury is generally determined by conduct, and not the actor's mental state or intent[,]' " (quoting 86 C.J.S. *Torts* § 23 (1997)), and "the 'eggshell skull' rule [that] the tortfeasor ... is responsible for the full extent of the injury, whether he could have foreseen it or not." However, in its written conclusions of law, the court expressly applied HRS § 707–711(1)(a) in determining that Minor acted intentionally or knowingly and that the prosecution proved its case beyond a reasonable doubt, conclusions of law material to the criminal offense charged, and the burden of proof in a criminal case.[8] Hence, while having made reference to an "opposite" situation in tort law, the court did not apply tort principles in convicting Minor, but only highlighted the contrast between these two areas of law.

## VIII.

Based on the foregoing, the family court's April 14, 2004 Decree Re: Law Violation Petitions, May 21, 2004 Order Granting in Part *Motion for Restitution*, and May 21, 2004 Order Denying Motion for Reconsideration of Adjudication are affirmed.

---

**8.** In its July 29, 2004 findings of fact and conclusions of law, the court concluded, in relevant part, that

2. Minor intentionally or knowingly caused substantial bodily injury to Jean Reinier [sic] Persenaire when Minor punched Mr. Persenaire in the jaw, causing a bone fracture to the jawbone. HRS § 707–711(1)(a).

3. " 'Substantial bodily injury' means bodily injury which causes: ...

(3) A bone fracture;" HRS § 707–700.

4.... [T]hat the State of Hawaii proved the material elements of its case by proof beyond a reasonable doubt, and the [c]ourt adjudicated the Minor of the offense of Assault in the Second Degree accordingly.