974 P.2d 1026

**Mila BOCALBOS, Petitioner–Appellant,**

**v.**

**KAPIOLANI MEDICAL CENTER FOR WOMEN AND CHILDREN and John Mullen and Company, Respondents–Appellees.**

**No. 20719.**

Supreme Court of Hawaiʻi.

March 17, 1999.

Reconsideration Denied
April 1, 1999.

As Amended April 1, 1999.

Mila Bocalbos, petitioner-appellant pro se.

Beverly S.K. Tom (Robert C. Kessner with her on the brief), Honolulu, HI, for respondents-appellees.

MOON, C.J., KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

PER CURIAM.

We granted petitioner-appellant Mila Bocalbos's (claimant) application for a writ of certiorari to review the opinion of the Intermediate Court of Appeals (ICA) in *Bocalbos v. Kapiolani Medical Center for Women and Children*, No. 20719, mem. op., —— Hawai'i ——, —— P.2d —— (Haw.App. Aug. 7, 1998) [hereinafter the "ICA's decision"]. In *Bocalbos*, claimant appealed a workers' compensation decision of the Labor and Industrial Relations Appeals Board (LIRAB0) that awarded claimant temporary total disability benefits for one year only, ordered claimant's employer to pay for some, but not all, of claimant's medical services, and awarded claimant travel reimbursement at less than the maaximum allowable rate. The ICA dismissed claimant's appeal for lack of jurisdiction, holding that claimant failed to appeal from a final appealable order because the question of permanent disability or disfigure-ment, if any, had been retained for further action by the labor director.

For the reasons set forth below, we hold that the decision and order of the LIRAB is a final appealable order under HRS § 91–14(a). Accordingly, we vacate the ICA's opinion and remand claimant's appeal to the ICA for a decision on the merits.

## I. *BACKGROUND*

On July 25, 1986, claimant was injured when she was struck on the head and shoulders by a falling section of soggy ceiling material while working at her part-time job as a medical technologist at the Kapiolani Medical Center for Women and Children (employer). Following the incident, she experienced headaches and neck and shoulder pain and was certified as suffering from a cervical strain disability. On August 11, 1986, employer filed an industrial injury report with the Department of Labor and Industrial Relations Disability Compensation Division and paid claimant temporary total disability (TTD) benefits for the next twelve months. Claimant began osteopathic treatment in 1987 and was diagnosed as suffering from temporomandibular joint (TMJ) dysfunction in 1988.

On February 22, 1989, the director of labor issued a decision finding that claimant sustained compensable head, neck, and shoulder injuries, TMJ dysfunction, and an aggravation of a preexisting psychological condition as a result of the July 25, 1986 incident. The director ordered employer: (1) to pay for all medical care, services, and supplies as the nature of claimant's injuries might require, including treatment for TMJ dysfunction and psychological conditions; and (2) to pay claimant TTD benefits of $15,120 for the 50–week period from August 10, 1986 through August 27, 1987. The director's decision further stated that "[t]he matters of permanent disability and disfigurement, if any, shall be determined at a later date."

Over the next four years, claimant continued receiving osteopathic treatments and had dental work performed to treat her TMJ symptoms. On September 21, 1992, the labor director issued a supplemental decision,

ordering that: (1) employer was liable for some, but not all, of the osteopathic and dental treatments claimant received since 1987; (2) claimant was entitled to travel reimbursement for her physician visits calculated at the personal vehicle rate for some visits, but at the public transportation rate for other visits; and (3) claimant was not entitled to further TTD benefits after August 1987. The director's decision further stated that "the issues of permanent disability and disfigurement, if any, are premature since claimant is still undergoing treatment for her TMJ condition" and, therefore, that "the matters of permanent disability and/or disfigurement, if any, shall be determined at a later date."

On December 21, 1993, the director issued a second supplemental decision ordering employer to pay for certain additional osteopathic and TMJ treatments.

Claimant and employer both appealed the director's September 21, 1992 and December 21, 1993 supplemental decisions to the LIRAB. On March 14, 1997 the LIRAB affirmed in part and reversed in part the denial of osteopathic and TMJ treatments, affirmed the award of additional osteopathic and TMJ treatments, affirmed the denial of TTD benefits after August 1987, and modified the award of travel reimbursement.

Claimant appealed the March 14, 1997 decision and order, and the matter was subsequently assigned to the ICA. The ICA issued an opinion on August 7, 1998 dismissing claimant's appeal for lack of jurisdiction.

## II. *THE ICA'S DECISION*

The ICA dismissed claimant's appeal for lack of appellate jurisdiction on finality grounds because the director of labor had retained jurisdiction over claimant's case to determine the question of permanent disability or disfigurement. The ICA relied on a decision of the Colorado Court of Appeals in *Gonzales v. Industrial Com'n of State of Colorado*, 689 P.2d 675 (Colo.App.1984), holding that a decision in a workers' compensation case awarding temporary disability benefits was not appealable because the matter

of permanent disability had not been determined. According to *Gonzales,*

> [i]f liability is not in issue, and the amount or duration of temporary benefits is the only matter questioned, and jurisdiction is retained to consider permanent disability, review must await the determination of the latter issue.

*Id.* at 676. The ICA adopted the holding of *Gonzales.*

> We find the reasoning of *Gonzales* persuasive. In the immediate case, liability is not in issue. Instead Claimant only contests the amount or scope of her TTD benefits award; the question as to temporary total disability benefits has been answered, but the question of *permanent* disability or disfigurement has been specifically retained for further action by the Director. Thus, the requisite degree of finality is lacking in the immediate case.

ICA's decision at 5–6 (original emphasis). In the ICA's view, *Gonzales* was consistent with our decision in *Mitchell v. State of Hawai'i,* 77 Hawai'i 305, 884 P.2d 368 (1994), where we held that an order of the LIRAB is not an appealable "final order" under HRS § 91–14(a) (1993) "if the rights of a party involved remain undetermined or if the matter is retained for further action." *Id.* at 5.

The ICA also concluded that the March 14, 1997 decision and order was not appealable under HRS § 91–14(a)'s provision allowing an appeal of a "preliminary ruling of the nature that deferral of review pending entry of a subsequent final decision would deprive appellant of adequate relief."

Claimant applied for a writ of certiorari seeking review of the ICA's opinion. We granted the application.

## III. *DISCUSSION*

### A. *Judicial Review of Workers' Compensation Decisions*

■ Claims for compensation under Hawaii's workers' compensation law are decided by the director of labor and industrial relations. HRS § 386–86 (1993). The decision of the director is final unless it is appealed to the LIRAB, which may affirm, reverse, or modify the director's decision or remand the

case to the director for further proceedings and action. HRS § 386–87 (1993). The decision or order of the LIRAB is directly appealable to this court. HRS § 386–88 (1993).

The appeal of a decision or order of the LIRAB is governed by HRS § 91–14(a), the statute authorizing appeals in administrative agency cases. HRS § 91–14(a) authorizes judicial review of "a final decision and order in a contested case" or "a preliminary ruling of the nature that deferral of review pending entry of a subsequent final decision would deprive appellant of adequate relief." For purposes of HRS § 91–14(a), we have defined "final order" to mean "an order ending the proceedings, leaving nothing further to be accomplished." *Gealon v. Keala*, 60 Haw. 513, 520, 591 P.2d 621, 626 (1979). "Consequently, an order is not final if the rights of a party involved remain undetermined or if the matter is retained for further action." *Id.*

Applying the *Gealon* definition of "final order" to a workers' compensation appeal, we held that a decision of the LIRAB denying compensation for one of two injuries was not an appealable final order because the amount of compensation for the other compensable injury had not yet been determined. *Mitchell v. State of Hawai'i, supra.* The ICA has likewise applied the *Gealon* definition of final order to hold that a decision of the LIRAB finding a workers' compensation claim to be compensable was not an appealable final order because the amount of compensation had yet to be determined. *Williams v. Kleenco,* 2 Haw.App. 219, 629 P.2d 125 (1981).

Other jurisdictions have statutes similar to HRS § 91–14(a) that require an appeal in a workers' compensation case be taken from a "final order." Some of these jurisdictions apply a *Gealon* definition and determine appealability by whether an order finally ends the workers' compensation case. For example, in Tennessee, an appealable order is one that "final[ly] [adjudicates] all of the issues which can be decided under the [workers' compensation] complaint[.]" *Aetna Casualty and Surety Co. v. Miller,* 491 S.W.2d 85, 86 (Tenn.1973). In Idaho, an appealable order is one that "finally dispose[s] of all of the claimant's claims[.]" *Kindred v. Amalgam-*

*ated Sugar Co.,* 118 Idaho 147, 795 P.2d 309, 311 (1990).

In New Jersey, an appeal in a worker's compensation case must be taken from a "final judgment." N.J. Stat. Ann. § 34:15–66; *Barry v. Wallace J. Wilck, Inc.,* 65 N.J.Super. 130, 167 A.2d 181, 185 (1961). Rather than applying a *Gealon* definition to determine appealability, New Jersey looks to the special nature of a workers' compensation case as a proceeding creating "independent rights" to awards for medical service, temporary compensation, and permanent disability such that an award for medical expenses and temporary disability benefits is appealable, even though the matter of permanent disability has not been determined. The rationale is as follows:

An employee is not required to wait until his permanent disability is fixed and evaluated before applying for relief. Medical attention or temporary compensation may be ordered by the Workmen's Compensation Division in accordance with [New Jersey law].

The statute providing awards for medical service and temporary compensation creates independent rights apart from the statute authorizing an award for permanent total disability. While the remedy of permanent disability is still to be determined, this is an independent right arising from a common remedy of workmen's compensation and is merely a matter of continuing that portion of the case until the results can be measured.

. . .

To conclude otherwise would subject a[n] [employer] to the danger of paying an award of temporary disability and medical service and then being unable to collect back the monies paid to a [claimant] if the reviewing court concluded that the injury was unconnected to [claimant's] employment. This is also in accordance with the policy of prompt payment of workmen's compensation awards[.] It is in the interest of the parties to have the issue of temporary disability determined as soon as possible when either of the parties questions the findings of the [workmen's compensation] Division on this issue.

*Judah v. General Super Markets, Inc.,* 99 N.J.Super. 389, 240 A.2d 44, 46 (1968) (citations omitted).

Maryland follows the New Jersey rule and permits an appeal of an order that finally decides a "benefit" under the workers' compensation law. Under this rule, an award of temporary total disability is appealable under the statute authorizing appeals from "any final action" of an administrative agency, even if other aspects of the workers' compensation case have not been finally decided. *Great American Ins. Co. v. Havenner,* 33 Md.App. 326, 364 A.2d 95 (1976).

> We think the term "final order" or "final action," within the ambit of the Workmen's Compensation Law, means an order or award made by the Commission in the matter then before it, determining the issues of law and of fact necessary for a resolution of the problem presented in that particular proceeding *and* which grants or denies some benefit under the Act.

*Id.* at 99.

The "benefit" rule is specifically codified in the Colorado workers' compensation statute, which authorizes judicial review of "any order which requires any party to pay a penalty or benefits or denies a claimant any benefit or penalty." Colo.Rev.Stat. § 8–43–301(2),(10),(11) (1998). This present version of the statute was enacted in 1983, changing the prior version providing for an appeal from "the final award allowing or denying said claim [for workers' compensation]." It was under the pre–1983 version of the statute that the Colorado Court of Appeals issued its decision in *Gonzales, supra,* that an award of temporary benefits is not appealable if the matter of permanent disability has been retained for later determination. The *Gonzales* court acknowledged that the award of temporary disability *was* appealable under the 1983 amendment to the workers' compensation statute, but held that the amendment did not apply retroactively to the 1982 award, as the administrative agency concluded. One year after *Gonzales,* the Colorado Court of Appeals applied the 1983 amendment to hold that an order requiring payment of medical expenses was an appealable final order, even though all other compensation issues had

been reserved for determination. *American Express v. Industrial Com'n of State of Colorado,* 712 P.2d 1132 (Colo.App.1985).

The ICA's reliance on *Gonzales* was not well-founded, inasmuch as *Gonzales* was effectively overruled by the 1983 amendment to Colorado's workers' compensation statute. Nonetheless, the ICA's position finds support in decisions of the Idaho Supreme Court holding that awards of temporary disability are not appealable final orders where the matter of permanent disability has been reserved for later determination. *Kindred v. Amalgamated Sugar Co., supra; Jensen v. Pillsbury Co.,* 121 Idaho 127, 823 P.2d 161, 161 (1992) ("[W]henever the Commission explicitly retains jurisdiction over a matter, that act by its very nature infers that there is neither a final determination of the case nor a final permanent award to claimant.").

The retention of jurisdiction to decide future workers' compensation benefits is a common practice in workers' compensation cases. 8 Larson, *Larson's Workers' Compensation Law,* § 81.53 (1998). Unlike Idaho, other jurisdictions permit appeals of awards of workers' compensation benefits even if jurisdiction is reserved to determine awards of future benefits. For example, in *Tube Turns Division v. Logsdon,* 677 S.W.2d 897 (Ky.App.1984), the Kentucky Court of Appeals held that an award of medical expenses and temporary total disability benefits was an appealable "final award or order," even though the matter of permanent partial disability benefits had been reserved for later determination. In *Mike Makemson Logging v. Colburn,* 600 So.2d 1049 (Ala.Civ.App. 1992), the Alabama Court of Civil Appeals rejected a jurisdictional challenge to an appeal of a temporary total disability award that reserved the matter of permanent disability benefits for later determination.

> ... [T]he determination of a judgment's finality ... depends on whether the judgment sufficiently ascertains and declares the rights of the parties.
>
>  ....
>
> ... [T]he trial court's retention of jurisdiction over the award of permanent disability does not bar [ ] an appeal [of a temporary disability award].

*Id.* at 1050. In *K-Mart Corporation v. Anderson,* 163 Ga.App. 493, 295 S.E.2d 186 (1982), the Georgia Court of Appeals held that an award of temporary disability benefits and reimbursement of medical expenses was an appealable "final award," even though the tribunal had continuing jurisdiction to award future medical expenses.

> The fact that there was no final disposition of a potential item covered by the [worker's compensation] Act ... did not nullify the finality of the Board's award.... The fact that the employee may incur additional medical expenses has no impact on the finality of the award made to date. Any other result would render many workers' compensation awards nonreviewable, since the question of liability for future medical expenses is often incapable of ascertainment at the time of the hearing and award.

*Id.* at 187. In *Ronshaugen v. Ramsey Engineering Co.,* 166 Mont. 214, 531 P.2d 1348 (1975), the Montana Supreme Court reviewed an award of medical benefits and nominal disability benefits, even though the tribunal retained jurisdiction to determine further disability benefits in the event there was a subsequent loss of earning capacity.

### B. *The Ongoing Nature of Workers' Compensation Cases*

Claimant argues that the "independent rights" or "independent benefits" approach adopted by New Jersey and Maryland is the sounder approach for determining the appealability of workers' compensation decisions. The Colorado legislature was apparently of the same view when it changed the law in 1983 to allow an immediate appeal of an order awarding or denying a benefit, instead of delaying appellate review until all matters in the workers' compensation case had been finally determined.

We long ago adopted a similar "independent rights" approach for determining the appealability of decisions in divorce proceedings. In *Cleveland v. Cleveland,* 57 Haw. 519, 559 P.2d 744 (1977), we were required to determine "at what time or times, in the ongoing process of disposition of a divorce proceeding by the family court, the orders of the court with respect to the various issues

customarily dealt with in such proceedings become final [and appealable]." *Id.* at 520, 559 P.2d at 746. Noting that HRS §§ 571–54 (1976) and 641–1(a) (1976) authorize appeals only from "final judgments" of the family court, we determined that "the test for appealability is 'whether the decree or order appealed from determines the ultimate rights of the parties, with respect to distinct matters which have no bearing on other matters left for further consideration.'" *Id.* at 522, 559 P.2d at 747 (citations omitted). Accordingly, we held that a decree that dissolves a marriage and divides the parties' property is final and appealable with respect to the dissolution of the marriage and the division of property, even though the decree expressly reserved questions of child custody and support for future determination. In our view, such a conclusion was consistent with the rationale of the collateral order doctrine, which "makes appealable orders which do not dispose of the entire litigation, but 'finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.'" *Id.* at 523, 559 P.2d at 747 (citation omitted).

We employ a similar approach in determining the appealability of family court orders in child custody proceedings under HRS Chapter 587. In *In the Interest of Jane Doe,* 77 Hawai'i 109, 883 P.2d 30 (1994), we held that an order awarding foster custody of a child was an appealable "final order" under HRS § 641–1(a), even though the order determined only one phase of the child custody proceeding and the question of permanent custody had yet to be decided. We concluded that such an order met the requisite degree of finality of an appealable order because of a parent's fundamental right to custody and control of one's child. We also recognized that child custody cases are ongoing proceedings, in which foster custody could potentially continue for a considerable length of time, leaving parents without the possibility of appellate review until such time as permanent custody is established or foster custody is terminated.

A workers' compensation case, like a divorce or a child custody case, is an ongoing proceeding. We agree ·with claimant's position that an inherent and unique characteristic of a workers' compensation case is its piecemeal nature.

> Workers' compensation cases, of necessity, are taken up piecemeal. A workers' compensation case requires this treatment because the various entitlements of the claimant ... mature at different times as the course of the claimant's physical recovery progresses. A workers' compensation case, unlike other personal injury litigation, can engender successive issues as to medical treatment, the entitlement to temporary disability benefits, the entitlement to permanent disability benefits, as well as ancillary issues of penalties, costs, attorney's fees and some other rather exotic issues. These can result in successive hearings and successive orders[.]

*Hunt v. International Minerals and Chemical Corp.*, 410 So.2d 640, 641 (Fla.App.1982). *See also Bickham v. Department of Mental Health*, 592 So.2d 96, 98–99 (Miss.1991) (Robertson, J., dissenting) ("The realities of the phenomena the [Workers' Compensation] Act regulates render [piecemeal] appeals a practical necessity.... The reason this is and must be so is that maximum medical recovery, permanent disability, and related issues may not be susceptible of resolution for several years.").

Claimant's case is illustrative of the above-described characteristics of a workers' compensation case. Claimant suffered her work injury on July 25, 1986. On February 22, 1989, she was awarded medical care, services, and supplies, including treatment for her injuries, and was awarded temporary total disability benefits for a 50–week period ending August 27, 1987. On September 21, 1992, she was awarded further medical benefits in the form of travel reimbursement for her physician visits. On May 23, 1997, when she sought appellate review of the LIRAB's decision, she was still undergoing treatment for her injuries. At that time, the matter of permanent disability or disfigurement had not been determined, and it remained undetermined as of October 21, 1998 when claimant sought review of the ICA's decision.

Unless an industrial injury is the form of loss of limb, paralysis, or the like, permanent disability is usually not determined until an injured worker's medical condition has stabilized. Claimant contends that medical stabilization of her TMJ condition could take years. She argues that the award of medical and TTD benefits is a matter that has been fully adjudicated by the director and the LIRAB and is completely separate from the matter of permanent disability benefits. Accordingly, claimant argues that there is no sound reason why she should not be afforded appellate review of the medical and TTD benefits award at this time and that requiring her to await determination of the permanent disability matter at some distant time is contrary to the legislative scheme of timely determination of workers' compensation benefits. We agree.

■ One of the primary purposes of the Hawai'i workers' compensation law is the prompt determination and disposition of claims for compensation. *Iddings v. Mee-Lee*, 82 Hawai'i 1, 8, 919 P.2d 263, 270 (1996). Under the law, claimants are entitled to: (1) medical care, services, and supplies immediately after a work injury and so long as reasonably needed, HRS § 386–21 (Supp. 1998); (2) weekly wages for temporary disability, HRS §§ 386–31(b) (1993) and 386–32(b) (Supp.1998); and (3) weekly wages for permanent disability, HRS §§ 386–31(a) (1993) and 386–32(a) (Supp.1998). These medical and wage benefits are independent benefits, separate and distinct from one another. An award of medical benefits and temporary disability wage benefits determines a claimant's rights to those benefits. An award of such benefits has no bearing on any future award for permanent disability wage benefits. Given that the matter of permanent disability benefits may be left undetermined for a considerable length of time, an injured worker or an employer must be allowed to seek appellate review of a medical benefits or temporary disability issue, even if the matter of permanent disability has been left for later determination. To delay appellate review of a medical benefits or tempo-

rary disability issue until permanent disability, if any, has been determined, would be entirely contrary to the legislative purpose of prompt determination of workers' compensation claims, which, of necessity, entails a prompt determination of each of the independent benefits afforded under the law.

 Accordingly, we hold that a decision that finally adjudicates the matter of medical and temporary disability benefits is an appealable final order under HRS § 91–14(a), even though the matter of permanent disability has been left for later determination.

■ We take judicial notice, based on other workers' compensation cases that have been before us, that it is the standard practice of the director of labor in any decision awarding temporary disability benefits, regardless of the nature or extent of the injury, to state that "the matter of permanent disability and/or disfigurement, if any, shall be reserved for later determination." Such a blanket reservation clause, apparently made for the protection of the injured worker, should not be used to prevent timely appellate review of an otherwise final decision on the matters of medical and temporary disability benefits.

### C. *Mitchell Clarified*

■ In *Mitchell v. State of Hawai'i*, *supra*, we held that a decision of the LIRAB in a workers' compensation case is not appealable under § 91–14(a) if a right of the claimant remains undetermined or if the case is retained for further action by the director of labor. We now hold that where entitlement to permanent disability or disfigurement benefits is the right of the claimant that remains undetermined and is the matter for which jurisdiction is retained by the director of labor, a decision of the LIRAB that otherwise finally adjudicates the matters of medical and temporary disability benefits is an

appealable final order under HRS § 91–14(a).

### IV. *CONCLUSION*

■ For the foregoing reasons, we vacate the ICA's opinion dismissing claimant's appeal for lack of jurisdiction. Furthermore, we remand the appeal to the ICA for a decision on the merits.[1]

---

1. Employer has raised the further jurisdictional issue of the timeliness of claimant's appeal, asserting that the May 23, 1997 notice of appeal was not filed within 30 days of the LIRAB's August 28, 1996 decision and order, the December 17, 1996 amended decision and order, and the March 14, 1997 second amended decision and order. The argument is without merit. The March 14, 1997 second amended decision and order constituted the final decision and order on the matters of medical benefits and temporary disability. Claimant timely moved for reconsideration of the March 14, 1997 decision and order on April 14, 1997. An order denying reconsideration was entered on April 23, 1997, after which a notice of appeal was filed on May 23, 1997. The notice of appeal is timely. HAR 12–47–53(a).