783 So.2d 778 (2000)
In The INTEREST of J.P.C., A Minor, Appellant,
v.
STATE of Mississippi, Appellee.
No. 1999-CA-01378-COA.
Court of Appeals of Mississippi.
December 5, 2000.
Rehearing Denied February 27, 2001.
Certiorari Denied April 26, 2001.
*779 C. Hugh Hathorn, Louisville, Attorney for Appellant.
Taylor Tucker, Louisville, Attorney for Appellee.
BEFORE McMILLIN, C.J., IRVING, AND MOORE, JJ.
McMILLIN, C.J., for the Court:
¶ 1. This case comes before the Court on appeal from the Youth Court of Winston County. It is brought by JPC, a minor who was adjudicated to be a delinquent child for his alleged participation in the burglary of a dwelling. JPC has appealed, alleging that the evidence was insufficient as a matter of law to support an adjudication *780 of delinquency. We agree and reverse and render the adjudication.

I.

The State's Challenge to the Court's Jurisdiction
¶ 2. Before reaching the merits of JPC's appeal, it is necessary for the Court to resolve one issue raised by the State in its brief. The State contends that this Court lacks jurisdiction to consider this appeal because it was not timely filed.
¶ 3. In order to better understand the State's argument, some preliminary background discussion of the Youth Court Law seems appropriate. Under the applicable provisions of this State's Youth Court Law, the issue of delinquency is determined in a separate proceeding known as an adjudicatory hearing. Miss.Code Ann. § 43-21-557 (Rev.1993). If the child is adjudicated a delinquent, the Youth Court must then schedule and conduct a disposition hearing to determine what sanctions should be imposed on child, "which [hearing] shall be separate, distinct and subsequent to the adjudicatory hearing...." Miss.Code Ann. § 43-21-601 (Rev.1993). The child's right of appeal from an unsatisfactory result is found in Section 43-21-651 of the Code, which requires that the notice of appeal to be "filed with the youth court clerk within ten (10) days after the rendition of the final order or decree to be appealed from ...." Miss.Code Ann. § 43-21-651(1) (Rev.1993) (emphasis supplied).
¶ 4. In this case, the separate order adjudicating JPC a delinquent was entered on March 16, 1999. The order of disposition was entered on July 20, 1999. JPC filed his notice of appeal with the clerk on July 22, 1999.
¶ 5. The State contends that, in view of the separate nature of the adjudicatory and disposition proceedings, the order of adjudication filed on March 16 was a "final order" within the meaning of Section 43-21-651 and that JPC's right to appeal from that adjudication ended ten days from that date, rather than ten days from the entry of the disposition order.
¶ 6. Neither side cites the Court to any authority on the question, and we have discovered none in our own research. However, we observe that, though a youth court proceeding is not a criminal proceeding, it does bear some measure of similarity to a criminal case in circuit court. The determination of delinquency parallels the adjudication of guilt, whether by a jury or by the court sitting in a bench trial, and the disposition order is roughly the equivalent of the judgment of sentence imposed by the circuit court in a criminal trial.
¶ 7. It is not uncommon in criminal proceedings for there to be a gap in time between a formal adjudication of guilt and the imposition of sentence, but no separate appeal lies from the adjudication of guilt that can be brought before sentence is imposed. We do not find compelling the argument that a different practice should apply in a Youth Court proceeding. It is a general proposition of law that a notice of appeal deprives the lower court of jurisdiction to proceed further. McNeil v. Hester, 753 So.2d 1057 (¶ 68) (Miss.2000). If an adjudicated delinquent could deprive the Youth Court of jurisdiction to consider his case further by filing a notice of appeal immediately after the adjudication of delinquency, he could effectively deny that court the power to conduct the required disposition hearing and impose appropriate sanctions until the appeal was decided. Such a result, if required by the law, would certainly be most unusual. We do not, however, think this is what the legislature intended.
*781 ¶ 8. Section 43-21-651(2) of the Youth Court Act states that an appeal does not stay the enforcement of the youth court's disposition of the case unless supersedeas is specifically granted by either the youth court or the appellate court on review if the youth court refuses to grant it. Miss. Code Ann. § 43-21-651(2) (Rev.1993). It does not stand to reason that the legislature, in establishing the procedures for resolving appeals from youth court, would set up a mechanism to obtain supersedeas during an appeal if the question could be unilaterally short-circuited by the juvenile simply by filing a notice of appeal immediately after the entry of the adjudication order and before the court could undertake the required disposition hearing.
¶ 9. Therefore, we conclude that, though separate hearings are required for the two phases of a youth court determination, they are both a part of the same overall proceeding for purposes of appeal, and there is no final appealable order in a delinquency proceeding until the youth court has entered its order of disposition.
¶ 10. Since the notice of appeal in this case was filed within ten days of entry of the disposition order, we find that the matter was timely appealed and that this Court has jurisdiction to reach the merits of the case.

II.

The Merits of the Appeal
¶ 11. An adjudication of delinquency is not a criminal conviction; however, the standard of proof to support a determination that a youth is a delinquent child is the same as for the criminal conviction of an adult, i.e., proof of all of the essential elements of the offense beyond a reasonable doubt. In Interest of Jenkins, 274 So.2d 143, 144 (Miss.1973). In this case, JPC was charged in the youth court petition with being an "accessory to the burglary" of the dwelling house of Bubba Pierce. The first thing we observe is that JPC did not challenge the sufficiency of that allegation. The petition must charge a juvenile with an offense that, if committed by an adult, would constitute a crime in this State. Under case law that has developed in this State, a person engaged in illegal activity who may not have personally committed all of the essential elements of a statutorily-defined crime may nevertheless be punished for that crime if it can be shown that the crime was committed by someone and the accused directed, aided, or abetted his accomplices in the successful completion of the enterprise. Traditionally, if the person intimately involved in the criminal enterprise was not actually present when the crime was committed, he is classed as an accessory before the fact. Hooker v. State, 716 So.2d 1104 (¶ 20) (Miss.1998). If, on the other hand, the person was present and assisting or encouraging his accomplices while the crime was being carried out, he is said to have aided and abetted in the crime. Id. In both cases, the person is punished as a principalthat is, he is exposed to the same sanctions as if he had committed all of the criminal acts himself.
¶ 12. On the other hand, the law recognizes that one not involved in the actual criminal enterprise and possibly even unaware that such an undertaking was under way may nevertheless, by such post-crime acts as assisting the perpetrator in eluding capture, expose himself to criminal sanction as an accessory after the fact. Miss.Code Ann. § 97-1-5 (Rev. 2000); Buckley v. State, 511 So.2d 1354, 1358 (Miss.1987). However, one acting in such capacity is not considered a principal and may not be convicted and punished as such. Mangum v. State, 762 So.2d 337 (¶ 16) (Miss.2000) (citing Hoops v. State, *782 681 So.2d 521, 534 (Miss.1996); Crosby v. State, 175 So. 180, 181, 179 Miss. 149 (1937)).
¶ 13. In this case, it is somewhat difficult to understand what the State meant in its charging document. It does not state whether JPC was charged as being an accessory before or after the fact. In actuality, the proof presented by the State would not appear to support either proposition since it was critical to the State's theory to demonstrate that JPC was actually present when the break-in occurred and that he had facilitated the break-in by guiding the pair who did the actual entry to the location of the house. The State's brief adopts as the theme of its argument that JPC, by his physical presence, aided and abetted the actual burglars in the accomplishment of their purpose. Nevertheless, JPC does not raise the threshold question of whether the wording of the youth court petition was sufficient to charge him with participating in a burglary, and we decline to consider the matter on our own motion. We will, instead, proceed to consider the case as if JPC were charged with burglary and the State proceeded on the theory that JPC was present and aided and abetted in the commission of the burglary.
¶ 14. Accepting the State's theory of the case that JPC aided and abetted in the commission of the burglary by acting as a guide to two other young men who actually committed the break-in, we find the proof necessary to establish this theory was, even taken in its best light, extremely weak. The State relied principally on several statements that JPC had given investigating officers in the days following the burglary, together with the testimony of another individual who claimed (a) to have driven JPC's accomplices to meet JPC, (b) to have watched all three disappear into the woods in the direction of the target residence, and (c) to have heard the report of a gunshot about twenty-five minutes later, after which all three hurriedly reemerged from the woods.
¶ 15. JPC gave three statements to investigating officers. His counsel protested that the statements were inadmissible because it was not shown that JPC had received the appropriate Miranda warnings. The court admitted the statements upon finding that they were offered in a noncustodial setting as a part of the investigatory process, rather than as a part of an accusatory proceeding against the youth. See, e.g., Porter v. State, 616 So.2d 899, 907 (Miss.1993)
¶ 16. JPC raises this as error, but concedes the noncustodial setting of the statements. He argues simply that "there appears to be something inherently wrong in admitting such a statement against a minor..." but cites no authority for that proposition. On this limited argument, we find ourselves unable to discover reversible error in the court's admission of JPC's pre-hearing statements to investigating officers.
¶ 17. However, our examination of the record as to the substance of these statements leaves us unconvinced that they do much of anything to implicate JPC as an accessory or aider and abettor in the burglary. In one statement, he claimed only to have heard a gunshot and seen the other two persons run from the woods. In another statement, he claimed that he was showing the two persons to another house for the apparent purpose of obtaining marijuana. In his third statement, he claimed that he was walking past the house with the other two persons when he discovered that they were breaking into the house and that they forced him to remain with them by holding a knife on him. Even if a factfinder could disregard as incredible those portions of JPC's statements that were *783 exculpatory and accept as true all those portions of the statements that tended to be inculpatory, there is nothing in those statements to support a reasonable inference that JPC was, in fact, aiding in some way in the burglary. The only other evidence of JPC's involvement came from Nekandrol Thames, who was an adult and had been indicted for burglary arising out of the incident. However, his testimony, outlined briefly above, did not provide any information that would support a reasonable inference that JPC participated in any way in the act of burglary. There is no evidence of preliminary planning or cooperation involving JPC and the other individuals that preceded their trip into the wooded area. In its best light, the evidence shows only that JPC may have been present when two other individuals broke and entered the dwelling. Even that evidence (which does nothing to raise a reasonable inference that this juvenile somehow aided, abetted, or encouraged the commission of the burglary) comes from one of JPC's non-custodial statements to police and the law is clear that an adjudication of delinquency cannot be based solely on the unsubstantiated incriminating statement of the juvenile. Miss.Code Ann. § 43-21-559(2) (Rev.1993).
¶ 18. Because the State's proof was insufficient as a matter of law to prove any involvement of JPC in the planning or commission of the burglary, we have no option but to reverse and render the Youth Court's adjudication that JPC was a delinquent child within the meaning of the Youth Court Act.
¶ 19. THE JUDGMENT OF THE YOUTH COURT OF WINSTON COUNTY ADJUDICATING JPC TO BE A DELINQUENT CHILD AND COMMITTING HIM TO THE OAKLEY TRAINING SCHOOL IS REVERSED AND RENDERED. COSTS OF THIS APPEAL ARE ASSESSED TO WINSTON COUNTY.
KING AND SOUTHWICK, P.JJ., BRIDGES, IRVING, LEE, MOORE, MYERS, PAYNE, AND THOMAS, JJ., CONCUR.