74 P.3d 998

**In the Interest of John DOE, Born September 17, 1984, Minor–Appellant.**

**No. 24107.**

Supreme Court of Hawai‘i.

Aug. 21, 2003.

Cindy A.L. Goodness, Deputy Public Defender, On the briefs, for minor-appellant.

Arleen Y. Watanabe, Deputy Prosecuting Attorney, On the briefs, for appellee State of Hawai'i.

MOON, C.J., LEVINSON, J., and Circuit Judge HIFO, in Place of ACOBA, J., who is Unavailable; Circuit Judge MASUOKA, Assigned by Reason of Vacancy, Concurring Separately, and with whom NAKAYAMA, J., Joins.

Opinion of the Court by MOON, C.J.

Minor-appellant John Doe (Minor) appeals from a family court order entered after he was orally adjudicated as a law violator. Appellee State of Hawai'i (the prosecution) contends that Minor's appeal contains jurisdictional defects that mandate dismissal. For the reasons discussed herein, we agree and, therefore, dismiss this appeal.

## I. BACKGROUND

### A. Minor's Prior Adjudications

Minor was adjudicated as a law violator on August 11, 1998, after the family court of the Second Circuit, the Honorable Eric G. Romanchak presiding, determined that Minor had committed, *inter alia*, the offense of Promoting a Detrimental Drug in the Third Degree, in violation of Hawai'i Revised Statutes (HRS) § 712–1249(1) (1993). Minor was placed on probation until September 17, 2002, his eighteenth birthday.

Minor was subsequently adjudicated as a law violator on a number of occasions for offenses that are not relevant for purposes of this appeal. Following each adjudication, the family court filed decrees modifying its existing orders, and, in every instance, the family court made clear that (1) Minor would remain on probation until his eighteenth birthday and, (2) as a condition of probation, he was to refrain from violating the law.

On March 22, 2000, Minor was again adjudicated as a law violator for an offense unrelated to this appeal. The family court ordered Minor committed to the Hawai'i Youth Correctional Facility (HYCF) for an indeterminate period not to exceed sixty days. Mittimus was stayed on condition that Minor not be adjudicated with respect to any further law violations.

### B. Adjudication Giving Rise to the Present Appeal

On December 1, 2000, the prosecution filed a petition alleging that Minor had committed the offense of promoting a detrimental drug in the third degree. The allegations stemmed from an October 27, 2000 incident when Minor's backpack was searched by his school's vice principal and marijuana was discovered. Prior to trial, Minor moved to suppress what he claimed was illegally seized evidence. At a hearing on January 24, 2001, the family court [1] concluded that the search was supported by reasonable suspicion and denied Minor's motion to suppress.

Thereafter, Minor consented to a trial on stipulated facts at the conclusion of which the family court ruled as follows:

> [T]he evidence presented in this case by the prosecution establishes beyond a reasonable doubt that [Minor] did ... commit a law violation in that he did knowingly possess marijuana in an amount, some amount, not a specified amount. But that would be sufficient to establish that he did commit the offense of promoting a detrimental drug in the third degree, which is in violation of ... [HRS § 712–1249(1)]. Since the offense was committed while he was under the age of 18, [Minor] comes

---

1. Judge Romanchak also presided over this matter.

within the jurisdiction of this Family Court. And I, at this time, find that he did commit a law violation and is, therefore, subject to disposition for such law violation by the Family Court, Second Circuit.

On January 25, 2001, the family court filed a "Decree re: Modification and Change of Law Violations Decree" [hereinafter, the challenged Decree], which provided that: (1) all prior orders relative to Minor were to remain unmodified and (2) Minor was to return to family court for a disposition hearing scheduled for February 7, 2001.

On January 29, 2001, Minor filed a "Motion for Reconsideration of Adjudication and Stay of Mittimus." Following a hearing held on February 5, 2001, the motion for reconsideration was denied;[2] the alternative motion to stay mittimus was continued pending the February 7, 2001 disposition hearing scheduled before the Honorable Geronimo Valdriz, Jr.

At the disposition hearing, the prosecution noted that a previous mittimus had issued against Minor and that it had been stayed on condition that he not be adjudicated as to any further law violations. The prosecution maintained that, in light of the oral adjudication of guilt, it was appropriate for mittimus to issue and for Minor to be sent to the HYCF. Minor, on the other hand, emphasized that he had recently begun participating in an Individualized Education Program and that, in light of the progress he was making, mittimus should be stayed so that he could continue his participation. Minor also noted that he intended to appeal the denial of the motion to suppress evidence and renewed the request that mittimus be stayed pending the outcome of the appeal. The prosecution urged the family court to reject Minor's argument on the ground that "mittimuses could be stayed everyday by filing an appeal." On the same day, at the conclusion of the hearing, Judge Valdriz filed a "Decree Re: Modification and Change of Law Violations Decree," ordering that Minor "be committed to

the Executive Director of the Office of Youth Services managing and controlling the [HYCF], located at Kailua, Oahu for an indeterminate period not to exceed 120 days[,]" but stayed mittimus on condition that Minor not be adjudicated for any further law violations.

On March 1, 2001, Minor filed an amended notice of appeal from the "Orders filed January 25, 2001, and February 13, 2001, adjudicating him as a law violator, and denying his motion for reconsideration."

On September 11, 2001—after Minor had filed his opening brief, but before the prosecution filed its answer,—the prosecution moved to dismiss the appeal for want of appellate jurisdiction. In its memorandum in support of the motion, the prosecution argued that no original decree of adjudication existed and that, therefore, the challenged Decree "cannot constitute the judgment appealed from, because it is a legal nullity, as it does not adjudicate [Minor] as a law violator, and it merely seeks to modify a non-existent adjudication decree." The prosecution also contended that the order denying Minor's motion for reconsideration was not appealable "as no decree of adjudication exists, [and, therefore,] any reconsideration of a non-existent decree is likewise ineffective." Alternatively, the prosecution moved to have the case temporarily remanded to the family court for entry of a properly worded adjudication order as well as entry of statutorily mandated findings of fact (FOFs) and conclusions of law (COLs).[3] On December 4, 2001, after briefing by the parties was completed, this court filed an order denying the prosecution's motion "without prejudice to the court considering the issues as presented in the answering brief."

## II. DISCUSSION

■ As indicated above, Minor is appealing from the challenged Decree and the order denying his "Motion for Reconsideration of Adjudication and Stay of Mittimus." On

---

2. The order denying the motion for reconsideration was subsequently entered on February 13, 2001.

3. We note that the challenged Decree and the order denying Minor's motion for reconsideration, as well as the decree entered subsequent to the disposition hearing, are devoid of FOFs and COLs.

appeal, the prosecution claims that the challenged Decree is defective because it contains no language expressly adjudicating Minor as a law violator and, therefore, is not an order of adjudication. Minor, on the other hand, argues that the challenged Decree— which was filed the day after the trial court orally adjudicated Minor as a law violator— necessarily reflects his adjudication even though it omits any language to this effect. Ultimately, we agree with the prosecution that this court lacks jurisdiction to consider the merits of Minor's appeal, but for different reasons.

 Preliminarily, we reiterate the well-settled principle that appellate courts have an independent obligation to insure they have jurisdiction to hear and determine each case. *Kernan v. Tanaka,* 75 Haw. 1, 15, 856 P.2d 1207, 1215 (1993); *State v. Moniz,* 69 Haw. 370, 372, 742 P.2d 373, 375 (1987); *Bacon v. Karlin,* 68 Haw. 648, 650, 727 P.2d 1127, 1129 (1986). This duty arises from the equally "well-settled rule that the legislature may define and limit the right of appeal because the remedy of appeal is not a common law right and it exists only by authority of statutory or constitutional provisions[.]" *In re Attorney's Fees of Mohr,* 97 Hawai'i 1, 4, 32 P.3d 647, 650 (2001) (citations omitted). In light of the legislature's prerogative of fixing the limits of appellate jurisdiction, an appealing party's "*compliance with the methods and procedures prescribed by statute is obligatory.*" *Grattafiori v. State,* 79 Hawai'i 10, 13, 897 P.2d 937, 940 (1995) (emphasis added).

HRS § 571-54 (1993) governs appeals from family court proceedings and provides that "[a]n interested party aggrieved by any order or decree of the [family] court may appeal to the supreme court for review of questions of law and fact upon the same terms and conditions as in other cases in the circuit court[.]" We have construed this language as indicating that HRS § 641-1 (1993), quoted *infra,* which defines the limits of appeals in civil actions and proceedings, like-

wise defines the limits of judgments, orders, or decrees in family court proceedings from which an appeal may lie. Specifically, we have held that, under HRS § 571-54, " 'we may hear appeals *from only final orders, or decrees except as otherwise provided by law.*' " [4] *In re Doe,* 77 Hawai'i 109, 114, 883 P.2d 30, 35 (1994) (quoting HRS § 641-1(a) (1985)) (emphasis added); *see also Bocalbos v. Kapiolani Medical Center for Women and Children,* 89 Hawai'i 436, 441, 974 P.2d 1026, 1031 (1999) (noting that HRS § 571-54 and HRS § 641-1(a) authorize appeals only from "final judgments" of the family court). Thus, in order to ascertain whether we have appellate jurisdiction to consider the merits of this case, we must first examine the parties' underlying assumption that an order of adjudication possesses the degree of finality required for purposes of perfecting the right to appeal under HRS § 571-54.

 It is well-settled that HRS § 641-1 does not allow an appeal "from any decision which is tentative, informal or incomplete." *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). "Nor does the statute permit appeals [from orders that are only] steps towards final judgment in which they will merge." *Id.* It means "to combine in one review all stages of the proceeding that effectively may be reviewed and corrected if and when final judgment results." *Id.*

*Association of Owners of Kukui Plaza v. Swinerton & Walberg Co.,* 68 Haw. 98, 105, 705 P.2d 28, 33–34 (1985) (footnote omitted) (brackets in original). These same considerations are relevant in determining whether an appeal may be allowed from a family court order under HRS § 571-54. We have, nevertheless, emphasized that, in light of a family court's continuing jurisdiction over a child, "the standard for a final judgment in a juvenile matter differs from that under general civil law [because t]he very nature of a juvenile proceeding entails an on-going case

---

4. One such exception to the general rule that only final judgments, orders or decrees are appealable is identified in HRS § 641-1(b), which allows the circuit court, upon application, to certify interlocutory appeals for appellate review.

Minor could have applied to the family court for certification of the order denying his motion to suppress evidence. However, because he did not do so, this exception is not relevant to our analysis of the jurisdictional issue.

which does not result in a final order, as that term is generally defined." *In re Doe*, 77 Hawai'i at 114, 883 P.2d at 35 (citation, internal quotation marks, and footnote omitted). In such cases, an order possesses the requisite finality if it "determines the ultimate rights of the parties, with respect to distinct matters which have no bearing on other matters left for further consideration." *Bocalbos*, 89 Hawai'i at 441, 974 P.2d at 1031 (quoting *Cleveland v. Cleveland*, 57 Haw. 519, 522, 559 P.2d 744, 747 (1977) (citations omitted)). In other words, *"[w]hat determines the finality of an order or decree is the nature and effect of the order or decree."* *In re Doe*, 77 Hawai'i at 114, 883 P.2d at 35 (quoting *Security Pac. Mortgage Corp. v. Miller*, 71 Haw. 65, 69, 783 P.2d 855, 857 (1989) (citation omitted)) (emphasis in original).

Examining the nature and effect of an order of adjudication entered as a result of a juvenile delinquency proceeding under HRS § 571–11(1), it is clear that such an order does not determine the ultimate rights and liabilities of the parties with respect to an alleged law violation. Hawai'i Family Court Rules (HFCR) Rules 121 through 157 implement the statutory provisions relevant to HRS § 571–11(1) proceedings. *See* HFCR Rule 121(a) (2000). These rules establish a clear-cut procedure for addressing alleged law violations committed by juveniles that requires: (1) the filing of a petition outlining the offenses that the juvenile is alleged to have committed; (2) an adjudicatory hearing, at which the prosecution has the burden of proving beyond a reasonable doubt the veracity of the material allegations; and (3) a disposition hearing, subsequent to which the family court may impose conditions of probation or detention upon adjudicated law violators. The family court is permitted to enter an appropriate judgment of disposition only upon completion of the procedural steps outlined in the rules, and the procedure, in its entirety, must be repeated whenever a juvenile is accused of having committed other law violations while under the jurisdiction of the family court. Thus, in the context of proceedings under HRS § 571–11(1), the ultimate rights and liabilities of the parties are determined by the judgment entered upon termination of the disposition hearing.[5] *See* HFCR Rule 151 (2000) ("Upon termination of the disposition hearing, the court shall enter an appropriate judgment of disposition."). Consequently, although an order of adjudication is a prerequisite to a disposition hearing and entry of a judgment of disposition, we conclude that the adjudication order does not, standing alone, serve to terminate the proceedings or dispose of all the claims arising from the filing of a petition alleging that a juvenile has committed law violations.

Our conclusion is in accord with the holdings of other jurisdictions whose juvenile delinquency proceedings are structured similarly to our own. As other courts have recognized, holding otherwise would undermine the effectiveness of the juvenile delinquency process, foster piecemeal litigation, and promote delay. As stated by the Arizona Court of Appeals:

> [T]he philosophy underlying the entire juvenile delinquency process is one of speedy disposition and treatment for the juvenile involved. If we should hold that the adjudicatory order is final immediately and subject to appeal, the salutary purpose of speed of disposition and treatment would be thwarted. If no disposition of the juvenile could be made pending the appeal and if the adjudication be affirmed on appeal, the delay involved in making that determination might render moot any benefits the juvenile might have reaped from treatment following closely the delinquency event.

*In re Maricopa County Juvenile Action No. J—74222*, 20 Ariz.App. 570, 514 P.2d 741, 742 (Ariz.Ct.App.1973). *See also, e.g., In Interest of J.P.C. v. State*, 783 So.2d 778, 780 (Miss. Ct.App.2000) ("If an adjudicated delinquent could deprive the Youth Court of jurisdiction to consider his case further by filing a notice of appeal immediately after the adjudication of delinquency, he could effectively deny that court the power to conduct the required disposition hearing and impose appropriate

---

5. As happened in this case, the "judgment" may take the form of a decree modifying and changing a law violations decree. *See, e.g.,* the February 7, 2001 "Decree Re: Modification and Change of Law Violations Decree" entered by the family court after the disposition hearing.

sanctions until the appeal was decided. Such a result, if required by the law, would certainly be most unusual. We do not, however, think this is what the legislature intended."); *Daniel v. State*, 64 Ark.App. 98, 983 S.W.2d 146 (1998) (an order of adjudication was not a final order in a juvenile delinquency proceeding because a subsequent disposition hearing was required); *In re B.J.*, 546 P.2d 1354, 1355 (Okla.Crim.App.1976) (an adjudicatory order, pending disposition, is not a final order). Accordingly, we hold that, in a juvenile delinquency proceeding under HRS § 571–11(1), an order of adjudication is not a final order from which a party may perfect the right to appeal.

■ Assuming, but not deciding, that the order from which Minor's appeal is taken is an order of adjudication, we further hold that it is not a final appealable order. However, we are also cognizant of the fact that Minor's notice of appeal was filed after entry of the February 7, 2001 "judgment of disposition," *see supra* note 6, which terminated the juvenile delinquency proceeding. Thus, Minor's designation of an interlocutory order in his notice of appeal may not necessarily be fatal insofar as we have previously recognized that

> "a mistake in designating the judgment, or in designating the part appealed from if only a part is designated, should not result in loss of the appeal as long as the intent to appeal from a specific judgment can be fairly inferred from the notice and the appellee is not misled by the mistake."

*City and County of Honolulu v. Midkiff*, 57 Haw. 273, 275–76, 554 P.2d 233, 235 (1976) (quoting 9 Moore's Federal Practice ¶ 203.18 (1975)). We, therefore, next examine whether the February 7, 2001 "Decree re: Modification and Change of Law Violations Decree" is a final judgment or order from which an appeal may be taken.

As previously stated, the legislature has strictly limited the right to appeals from juvenile delinquency proceedings by providing, under HRS § 571–54, that:

> An order or decree entered in a proceeding based upon section 571–11(1), (2), (6), or (9) *shall be subject to appeal to the supreme court only as follows:*

> Within twenty days from the date of the entry of any such order or decree, any party directly affected thereby may file a motion for a reconsideration of the facts involved. The motion and any supporting affidavit shall set forth the grounds on which a reconsideration is requested and shall be sworn to by the movant or the movant's representative. The judge shall hold a hearing on the motion, affording to all parties concerned the full right of representation by counsel and presentation of relevant evidence. The findings of the judge upon the hearing of the motion and the judge's determination and disposition of the case thereafter, and any decision, judgment, order, or decree affecting the child and entered as a result of the hearing on the motion shall be set forth in writing and signed by the judge. Any party deeming oneself aggrieved by any such findings, judgment, order, or decree shall have the right to appeal therefrom to the supreme court upon the same terms and conditions as in other cases in the circuit court and review shall be governed by chapter 602[.]

*Id.* (emphasis added).

We have held that, "[b]y the plain language of the statute, a party desiring to appeal from an order entered in a proceeding governed by HRS § 571–54 is required to file a motion for reconsideration." *In re Doe Children*, 94 Hawai'i 485, 486, 17 P.3d 217, 218 (2001) (citation omitted); *see also In re Doe*, 77 Hawai'i at 113, 883 P.2d at 34 ("Mother's right to appeal the family court's ruling in this case required her to file a motion for reconsideration"). As noted by the Intermediate Court of Appeals, "the purpose of the statute is to allow the court and' the parties to make a *complete* record of the proceedings and to set forth in writing the findings and disposition of the family court for appeal purposes[.] It requires them to focus their attention and, eventually[,] the appellate court's attention, on the errors to be relied upon on appeal." *In re Doe*, 3 Haw.App. 391, 394, 651 P.2d 492, 494 (1982) (emphasis added) (also noting that a party need not petition the court to reconsider its order or decree, but *"if he [or she] intends to*

*appeal the decision, he [or she] must"* move for reconsideration (emphasis in original)).

Thus, HRS § 571–54 and the case law interpreting the statute make clear that a party wishing to perfect the right to appeal must move the family court to reconsider its *final order or decree* prior to divesting it of jurisdiction through the filing of a notice of appeal. The legislative history underlying the original enactment of HRS § 571–54 indicates that the statute was intended to

> provide[ ] for a petition for rehearing and reconsideration of the facts, *upon the entry of a judgment order* on decrees affecting a dependent or delinquent child, and provides that the findings of the judge *upon such rehearing* and his [or her] disposition of the case shall be set forth in writing and signed by the judge. From *that* written judgment, order, or decree, an appeal is provided.

*In re Doe*, 3 Haw.App. at 394 n. 2, 651 P.2d at 494 n. 2 (citing S. Stand. Comm. Rep. No. 314, 24th Terr. Leg., *reprinted in* Senate Journal 823 (1948)) (emphases added).

In this case, Minor moved for reconsideration of the January 25, 2001 "adjudication" rather than the February 7, 2001 decree or "judgment of disposition" that terminated the proceedings stemming from the petition. Moreover, because the February 5 hearing on Minor's motion for reconsideration was held prior to the February 7 disposition hearing, the family court could not have reconsidered a judgment that could not yet have been entered. Thus, the procedural requirements of HRS § 571–54 were clearly not met because Minor did not move for reconsideration of the disposition of the case, no hearing to reconsider the disposition was held, and no final written judgment, order, or decree containing the findings and conclusions on which the family court based its disposition was entered. Accordingly, we hold that Minor's appeal cannot stand.

### III. *CONCLUSION*

Based on the foregoing, we have no alternative but to dismiss this case for lack of appellate jurisdiction.

Concurring Opinion by Circuit Judge MASUOKA, with whom NAKAYAMA, J., Joins.

I concur with the result, but for a different reason. I agree that an appeal may be taken only from a written disposition of a motion for reconsideration. However, even before the required motion for reconsideration can be heard by the family court, there must be a written decree adjudicating the minor as a law violator. Because there was only an oral adjudication, the appellant is not a law violator and for this reason, the family court did not have jurisdiction to entertain a motion for reconsideration and this Court does not have jurisdiction over the appeal.